**SYLVIA BAIZ**
California Bar No. 124367
The Granger Building
964 Fifth Avenue, Suite 214
San Diego, California 92101
Telephone: (619) 544-1410
Facsimile: (619) 544-1473

Attorney for Defendant **Lara**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(**HON. WILLIAM Q. HAYES**)

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | ) Criminal No. **08-CR-0443-WQH** |
| Plaintiff, | ) Date: April 1, 2008 |
| | ) Time: 2:00 p.m. |
| v. | ) |
| | ) **STATEMENT OF FACTS AND** |
| **ALBERTO JACOBO LARA**, | ) **AUTHORITIES IN SUPPORT OF** |
| | ) **DEFENDANT'S MOTIONS** |
| Defendant. | ) |

**I.**

**STATEMENT OF FACTS**

Mr. Lara was arrested on January 23, 2008 at the California Highway patrol (CHP) San Onofre truck inspection facility. The CHP arrested Mr. Lara "...for failure to register as a sex offender." The border patrol was notified by the CHP regarding Mr. Lara's arrest. According to the complaint, immigration data base records revealed the Mr Lara was removed by order of the executive office for immigration review. An arrest warrant was requested and Mr. Lara was brought to federal court on January 28, 2008 to face charges that he was found in the United States in violation of 8 U.S.C. §1326(b).

Although counsel, received notification on March 17, 2008 that discovery was available to be picked from the U. S. attorney's office, it was still not made available at 4:00 when counsel's assistant sought to retrieve it.

## II.

## **MOTION TO COMPEL DISCOVERY**

Mr. Lara requests the following discovery pursuant to Fed. R. Crim. P. 12(b)(4) and 16:

(1) all written and oral statements made by Mr. Lara whether made to CHP or immigration officials be disclosed. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of Mr. Lara are contained. It also includes the substance of any oral statements which the government intends to introduce at trial. Mr. Lara specifically requests that his recorded statements to both CHP and Immigration officers be disclosed. These are all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and Brady v. Maryland, 373 U.S. 83 (1963). Mr. Lara also requests any response to any Miranda warnings which may have been given to him. See United States v. McElroy, 697 F.2d 459 (2d Cir. 1982);

(2) all documents, statements, agents' reports, and tangible evidence favorable to Mr. Lara on the issue of **guilt or punishment** and/or which affects the credibility of the government's case. This evidence must be produced pursuant to Brady v. Maryland, 373 U.S. 83, 87 (1963), and United States v. Agurs, 427 U.S. 97 (1976);

(3) all evidence, documents, records of judgments and convictions, photographs and tangible evidence, and information pertaining to any prior arrests and convictions or prior bad acts. Evidence of prior record is available under Fed. R. Crim. P. 16(a)(1)(B). Evidence of prior similar acts is discoverable under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609;

(4) all evidence seized as a result of any search, either warrantless or with a warrant, in this case. He also specifically requests copies of all photographs, videotapes or recordings made in this case. This is available under Fed. R. Crim. P. 16(a)(1)(C);

(5) all arrest reports, investigator's notes, memos from arresting officers, sworn statements and prosecution reports pertaining to Mr. Lara, including his "A" file and the recordings of his prior deportation(s). These are available under Fed. R. Crim. P. 16(a)(1)(B)

2

and (C), Fed. R. Crim. P. 26.2 and 12(i);

(6) the personnel file of the interviewing agent(s) containing any complaints of assaults, abuse of discretion and authority and/or false arrest. Pitchess v. Superior Court, 11 Cal. 3d. 531, 539 (1974). In addition, the defense requests that the prosecutor examine the personnel files of all testifying agents, and turn over Brady and Giglio material reasonably in advance of trial. United States v. Henthorn, 931 F.2d 29, 30-31(9th Cir. 1991). If the prosecutor is unsure as to whether the files contain Brady or Giglio material, the files should be submitted to the Court, in camera. Id. The prosecution should bear in mind that there exists an affirmative duty on the part of the government to examine the files. Id.;

(7) any and all statements made by any other uncharged co-conspirators. The defense is entitled to this evidence because it is material to preparation for the defendant's case and potentially Brady material. Also, insofar as such statements may be introduced as co-conspirator statements, they are discoverable. Fed. R. Crim. 16(a)(1)(C) and Brady. This evidence must be produced pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976);

(8) Mr. Lara requests copies of any and all audio/video tape recordings made by the agents in this case and any and all transcripts, including taped recordings of any conversations of any of the agents involved in this case. Mr. Lara specifically requests copies of the audio tape of all the deportation hearings in this case that the government intends to use in its case-in-chief.. This evidence is available under Fed. R. Crim. P. 16(a)(1)(C);

(9) Mr. Lara specifically requests the name and last known address of each prospective government witness. See United States v. Napue, 834 F.2d 1311 (7th Cir. 1987); United States v. Tucker, 716 F.2d 583 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); United States v. Cook, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses).

(10) all other documents and tangible objects, including photographs, books, papers, documents, photographs, or building or places or copies of portions thereof which are

1 material to Mr. Lara' defense or intended for use in the government's case-in-chief or were
2 obtained from or belong to Mr. Lara.  Mr. Lara also requests access to all his personal
3 belongings seized, including his wallet, any clothes he was wearing at the time of his arrest
4 and any baggage he had with him. Rule 16(a)(1)(C);

5     (11) all results or reports of scientific tests or experiments, or copies of which are
6 within the possession, control, or custody of the government or which are known or become
7 known to the attorney for the government, that are material to the preparation of the defense,
8 including the opinions, analysis and conclusions of experts consulted by law enforcement
9 including finger print specialists in the instant case.  These must be disclosed, once a request
10 is made, even though obtained by the government later, pursuant to Fed.R.Crim.Pro.
11 16(a)(1)(D).

12     (12)  any express or <u>implicit</u> promise, understanding, offer of immunity, of past,
13 present, or future compensation, agreement to execute a voluntary return rather than
14 deportation or any other kind of agreement or understanding between <u>any</u> prospective
15 government witness and the government (federal, state and local), including any implicit
16 understanding relating to criminal or civil income tax liability.  <u>United States v. Shaffer</u>, 789
17 F.2d 682 (9th Cir. 1986); <u>United States v. Risken</u>, 788 F. 2d 1361 (8th Cir. 1986); <u>United
18 States v. Luc Levasseur</u>, 826 F.2d 158 (1st Cir. 1987);

19     (13) any discussion with a potential witness about or <u>advice</u> concerning any
20 contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the
21 advice not followed.  <u>Brown v. Duggen</u>, 831 F.2d 1546, 1558 (11th Cir. 1986) (evidence that
22 witness sought plea bargain is to be disclosed, even if no deal struck); <u>Haber v. Wainwright</u>,
23 756 F.2d 1520, 1524 (11th Cir. 1985);

24     (14) any evidence that of any witnesses which were with Mr. Lara at the time of his
25 arrest or information that any prospective government witness is biased or prejudiced against
26 the defendant, has a motive to falsify or distort his or her testimony or is prejudiced against
27 Mexican people.  <u>Pennsylvania v. Ritchie</u>, 480 S.Ct. 39 (1989); <u>United States v. Strifler</u>, 851
28 F.2d 1192 (9th Cir. 1988);

4

(15) any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction. See Rule 608(b), Federal Rules of Evidence and Brady;

(16) any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct. United States v. Chitty, 760 F.2d 425 (2d Cir.), cert. denied, 474 U.S. 945 (1985); and,

(17) any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness's ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic. United States v. Strifler, 851 F.2d 1197 (9th Cir. July 11, 1988); Chavis v. North Carolina, 637 F.2d 213, 224 (4th Cir. 1980);

(18) the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will not be called as a government witness. Mr. Lara specifically requests the names of the other three persons arrested with him as they are percipient witness to the manner in which they were arrested. Specifically, Mr. Lara requests that the I-213s or any other records of their arrests be provided in discovery. United States v. Cadet, 727 F.2d 1469 (9th Cir. 1984);

(19) the name and last known address of each prospective government witness. See United States v. Napue, 834 F.2d 1311 (7th Cir. 1987); United States v. Tucker, 716 F.2d 583 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); United States v. Cook, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses);

(20) the name of any witness who made an arguably favorable statement concerning the defendant or who could not identify him or who was unsure of his identity, or participation in the crime charged. Jackson v. Wainwright, 390 F.2d 288 (5th Cir. 1968); Chavis v. North Carolina, 637 F.2d 213, 223 (4th Cir. 1980); James v. Jago, 575 F.2d 1164, 1168 (6th Cir. 1978); Hudson v. Blackburn, 601 F.2d 785 (5th Cir. 1975);

(21) Mr. Lara requests a transcript of the grand jury testimony and rough notes of all

5

1 witnesses expected to testify <u>at</u> <u>the</u> <u>motion</u> <u>hearing</u> or at trial. This evidence is discoverable
2 under Fed. R. Crim. P. 12(i) and 26;

3      (22) <u>Jencks Act Material</u>. The defense requests all material to which defendant is
4 entitled pursuant to the Jencks Act, 18 U.S.C. § 3500, reasonably in advance of trial,
5 including dispatch tapes. A verbal acknowledgment that "rough" notes constitute an accurate
6 account of the witness' interview is sufficient for the report or notes to qualify as a statement
7 under §3500(e)(1). <u>Campbell v. United States</u>, 373 U.S. 487, 490-92 (1963). In <u>United</u>
8 <u>States v. Boshell</u>, 952 F.2d 1101 (9th Cir. 1991), the Ninth Circuit held that when an agent
9 goes over interview notes with the subject of the interview the notes are then subject to the
10 Jencks Act. The defense requests pre-trial production of <u>Jencks</u> material to expedite cross-
11 examination and to avoid lengthy recesses during the pre-trial motions hearings or trial. Mr.
12 Lara specifically requests rough notes regarding the interview of Mr. Lara, especially if the
13 notes reflect the time and place of those statements. Mr. Lara puts the government on notice
14 that he will seek rough notes of any and all testifying agents on the date set for the motion
15 hearing, and requests that the agent/witnesses be instructed to bring the notes to court.

### III.

**THE INDICTMENT MUST BE DISMISSED OR LIMITED TO A TWO YEAR STATUTORY MAXIMUM BECAUSE THE INDICTMENT FAILS TO CHARGE THAT DEFENDANT WAS CONVICTED OF A PRIOR FELONY.**

In <u>Almendarez-Torres v. United States</u>, 523 U.S. 224, 118 S.Ct. 1219 (1998), a five Justice majority held that the government can prove the crime of being found in the United States after deportation without proving the fact of prior conviction. The fact of the prior conviction could be proved to the judge during a sentencing hearing without offending the Fifth or Sixth Amendment of the Constitution. Soon after <u>Almendarez-Torres</u>, a five-four decision written by Justice Thomas, the Supreme Court embarked on a series of cases holding that any fact which increases the maximum punishment must be charged and proven to the jury beyond a reasonable doubt. This line of cases began with <u>Jones v. United States</u> 526 U.S. 227, 119 S.Ct. 1215 (1999), where the Supreme Court addressed the issue of when

disputed factors in a criminal case are considered elements of the offense rather than sentencing factors. The Jones Court distinguished its opinion in Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219 (1998) stating "the holding last Term [in Almendarez-Torres] rested in substantial part on the tradition of regarding recidivism as a sentencing fact, not as an element to be set out in the indictment." Jones, 526 U.S. at pp.248-249, 119 S.Ct. at p. 1227. In so holding, the Supreme Court opined that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to jury, and proven beyond a reasonable doubt." Id., 526 U.S. at p.243 n.6, 119 S.Ct. at p. 1224 n.6. Most important for this Court, however, is that fact that in Jones, Justice Thomas switched sides indicating that the Almendarez-Torres decision was in question since the five Justice majority had been broken and five justices now agreed with the dissent in Almendarez-Torres which opined that prior convictions which raised the maximum possible sentence had to pled and proved to the jury beyond a reasonable doubt. Then in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000) the Supreme Court announced the constitutional rule that under the Sixth Amendment, any fact that increases the maximum punishment must be proved to the jury beyond a reasonable doubt. More important for the instant case, Justice Thomas wrote an extensive dissent in which he repudiated his opinion in Almendarez-Torres indicating that if presented with the issues in Almendarez-Torres he would side with the minority thereby tilting the vote and making the Almendarez-Torres minority opinion the majority holding. Almendarez-Torres, 530 U.S. at 520-521; 120 S.Ct. at 2379. The minority in Almendarez-Torres stated that any fact – whether a fact related to the commission of the charged offense or the fact of a prior conviction – which increases the maximum possible sentence must be proved to the jury beyond a reasonable doubt. Almendarez-Torres, 523 U.S. at 248-271; 118 S.Ct. at 1233-1244. The import of this statement is that after Jones and Apprendi a majority of the Supreme Court now is of the opinion that even prior convictions must be pled and proved to a jury beyond a reasonable doubt.

        The readiness of the Supreme Court to readdress and overrule Almendarez-Torres was

made clear this past week in <u>Shepard v. United States</u>, 544 U.S. 13 (2005). Indeed, it seems that <u>Almendarez-Torres</u> should already be considered bad law according to Justice Thomas's concurrence:

> <u>Almendarez-Torres</u>, like <u>Taylor</u>, has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that <u>Almendarez-Torres</u> was wrongly decided. See 523 U.S., at 248-249, 118 S.Ct. 1219 (SCALIA, J., joined by STEVENS, SOUTER, and GINSBURG, JJ., dissenting); <u>Apprendi</u>, supra, at 520-521, 120 S.Ct. 2348 (THOMAS, J., concurring). The parties do not request it here, but in an appropriate case, this Court should consider <u>Almendarez-Torres</u> ' continuing viability. Innumerable criminal defendants have been unconstitutionally sentenced under the flawed rule of <u>Almendarez-Torres</u>, despite the fundamental "imperative that the Court maintain absolute fidelity to the protections of the individual afforded by the notice, trial by jury, and beyond-a-reasonable-doubt requirements." <u>Harris v. United States</u>, 536 U.S. 545, 581-582, 122 S.Ct. 2406 (2002) (THOMAS, J., dissenting).

Thus, it seems clear that the rules of <u>Apprendi</u> through <u>Booker</u> the government must plead and prove the prior conviction which it seeks to use to enhance Mr. Delgado's enhancement. Mr. Delgado believes there are only two possible remedies to the government's failure to plead the prior conviction: (1) proceed to trial on the current indictment but limit the conviction to a section 1326(a) conviction with a two year maximum sentence; (2) dismiss the indictment for failure to charge all the elements.

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the Supreme Court held that "'it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.'" <u>Apprendi</u>, 530 U.S. at 490 (quoting <u>Jones v. United States</u>, 526 U.S. 227, 252-53 (1999) (Stevens, J., concurring)); accord <u>Jones</u>, 526 U.S. at 253 (Scalia, J., concurring) ("it is unconstitutional to remove from the jury the assessment of facts that alter the congressionally prescribed range of penalties to which a criminal defendant is exposed"); *see also* <u>Mullaney v. Wilbur</u>, 421 U.S. 684 (1975); <u>In re Winship</u>, 397 U.S. 358 (1970). In reaching that conclusion, the Supreme Court acknowledged that its previous decision in <u>Almendarez-Torres v. United States</u>, 523 U.S. 224 (1998), was at least problematic in that its holding does not seem to

8

1  comport with the plain constitutional rule announced in Apprendi.  *See* Apprendi, 530 U.S. at
2  487 (describing Almendarez-Torres as "represent[ing] at best an exceptional departure from
3  the historic practice we have described"); *see also id.* at 489 ("it is arguable that Almendarez-
4  Torres was incorrectly decided").

5        *Apprendi's* solution to the conflict between its rule and the result in Almendarez-
6  Torres was to treat the latter as an aberrational – and strictly limited – decision addressing
7  only the sufficiency of the indictment in that case.  See Apprendi, 530 U.S. at 487-88.  In
8  short, it represented an odd result owing to its peculiar facts.  In Almendarez-Torres, the
9  defendant was charged with a "found in" section 1326 offense, but his indictment did not
10 allege that he had previously been deported after having suffered aggravated felony
11 convictions.  Almendarez-Torres, 523 U.S. at 227.  Even so, during his guilty plea
12 Almendarez Torres "admitted that he had been deported, and that he had later unlawfully
13 returned to the United States, and that the earlier deportation had taken place 'pursuant to'
14 three earlier 'convictions' for aggravated felonies."  Id.  (quoting from the record).  It was
15 against this highly unusual factual backdrop that Almendarez-Torres analyzed an objection at
16 sentencing that the indictment contained no allegations of the prior convictions -- convictions
17 which the petitioner admitted as part of his guilty plea.

18       Apprendi noted these odd facts, *see* 530 U.S. at 487, concluding that, in light of the
19 admissions under oath, "[b]oth the certainty that procedural safeguards attached to any 'fact'
20 of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of
21 that 'fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise
22 implicated in allowing a judge to determine a 'fact' increasing punishment beyond the
23 maximum of the statutory range."  *Id.* at 488.  Thus, "no question concerning the right to a
24 jury trial or the standard of proof that would apply to a contested issue of fact was before the
25 Court" when it rendered its decision in Almendarez-Torres.  Id.  Nor was there any real issue
26 as to the sufficiency of the indictment.  See United States v. Cotton, 535 U.S. 625 (2002).
27 Because Mr. Lara exercised his Fifth Amendment grand jury right, and his Sixth Amendment
28 right to jury trial, his case squarely presents the issues that Apprendi observed were left open

9

1  in Almendarez-Torres.  See id.

2     The recent decisions of United States v. Booker, 543 U. S. 220 (2005) and Blakely v.
3  Washington, 542 U.S. 296 (2004), reconfirm that Apprendi limits, if not directly overrules,
4  Almendarez-Torres to situations where the individual admits the prior convictions during a
5  guilty plea.  Blakely holds, "[o]ur precedents make clear, however, that the 'statutory
6  maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the
7  basis of the facts reflected in the jury verdict or admitted by the defendant."  Blakely, 124
8  S.Ct. at 2537 (emphasis in original).  See also id. at 2543 ("As Apprendi held, every
9  defendant has the *right* to insist that the prosecutor prove to a jury all facts legally essential to
10 the punishment")(emphasis in original).  The only way to read Blakely as not directly
11 overruling Almendarez-Torres, is by limiting Almendarez-Torres to its facts -- where the
12 individual admits the prior conviction during a guilty plea.

13    "Almendarez-Torres . . . stands for the proposition that not every fact expanding a
14 penalty range must be stated in a felony indictment, the precise holding being that recidivism
15 increasing the maximum penalty need not be so charged."  Jones v. United States, 526 U.S.
16 227, 248 (1999); accord Apprendi, 530 U.S. at 487-88.  That "precise holding" cannot stand
17 in light of Blakely, Apprendi and the Fifth and Sixth Amendment right to indictment by a
18 Grand Jury.   A majority of Justices agree that Almendarez-Torres does not survive
19 Apprendi.  In Apprendi, the majority asserted that "it is arguable that *A*lmendarez-Torres was
20 wrongly decided," *A*pprendi, 530 U.S. at 489.  More importantly, Justice Thomas, who cast
21 the fifth and deciding vote in Almendarez-Torres, has admitted that his vote was erroneous.
22 Apprendi, 530 U.S. at 518-20 (Thomas, J., concurring).  Even the *A*pprendi dissent
23 recognized that Almendarez-Torres cannot be followed without disregarding Apprendi.  See
24 Apprendi, 530 U.S. at 535 (O'Connor dissenting) ("Almendarez-Torres constituted a clear
25 repudiation of the rule the Court adopt[ed in Apprendi]"); *accord id.* at 559 (the distinction
26 between the section 1326 scheme at issue in Almendarez-Torres and the New Jersey scheme
27 at issue in *Apprendi* is "a difference without constitutional significance").  Almendarez-
28 Torres no longer commands a majority of the members of the Court, *see id.* at 518-20

1  (Thomas, J., concurring), and Justice O'Connor, joined by Chief Justice Rehnquist and
2  Justices Kennedy and Breyer, has recognized that Apprendi and Almendarez-Torres cannot
3  be reconciled. See id. at 535 (O'Connor dissenting). Moreover, the Court has recently
4  indicated a desire to directly overrule Almendarez-Torres and reconcile the cases requiring
5  that any and all facts which increase the maximum punishment must be pled and proven
6  beyond a reasonable doubt to a jury.

7       The Supreme Court has long made it clear that the indictment must both contain all of
8  the elements of the offense and give the defendant notice. See, e.g., Russell v. United States,
9  369 U.S. 749, 763-64 (1962)("the indictment [must] contain[] the elements of the offense
10 intended to be charged, and sufficiently apprize[] the defendant of what he must be prepared
11 to meet") (internal quotations, citations omitted); accord Stirone v. United States, 361 U.S.
12 212, 216-19 (1960). The Fifth and Sixth Amendment rights discussed in Russell are
13 applicable to all elements: "The Court has not suggested in its previous opinions . . . that
14 there is a difference . . . between, on the one hand, a right to a jury determination, and, on the
15 other, a right to notice by indictment and to a determination based upon proof by the
16 prosecution beyond a reasonable doubt." Jones, 526 U.S. at 269 (Kennedy, J., dissenting). In
17 short, if there is a right to jury trial as to a particular element, there is also a right to a Grand
18 Jury determination of probable cause and notice.

19      Indeed, Apprendi itself makes clear that there should be no dichotomy between jury
20 trial rights and Grand Jury rights. The historical precedent upon which Apprendi relies
21 squarely supports the proposition that any fact which increases the statutory maximum must
22 not only be submitted to the jury and proved beyond a reasonable doubt, it must also be
23 alleged in the indictment. See Apprendi, 530 U.S. at 478 (citing J. Archbold, Pleading and
24 Evidence in Criminal Cases 44 (15th ed. 1862) and 4 Blackstone 369-70); see also id. at 480
25 ("Just as the circumstances of the crime and the intent of the defendant at the time of
26 commission were often essential elements to be alleged in the indictment, so too were the
27 circumstances mandating a particular punishment"); Ex Parte Bain, 121 U.S. 1, 12-13 (1887)
28 ("We are of the opinion that an indictment found by the grand jury was indispensable to the

1  power of the court to try the petitioner for the crime with which he was charged"). In short,
2  "'the indictment must contain an allegation of every fact which is legally essential to the
3  punishment to be inflicted.'" Id. at 489 n.15 (quoting United States v. Reese, 92 U.S. 214,
4  232-33 (1875) (separate opinion of Clifford, J.)); accord United States v. Hooker, 841 F.2d
5  1225, 1228 (4th Cir. 1988) (observing that "[i]t is elementary that every ingredient of [a]
6  crime must be charged in the bill" and collecting cases) (internal quotations omitted).

7  Blakely reaffirmed this historical precedent. See Blakely, 124 S. Ct. at 2536 (stating
8  that the Apprendi rule "reflects two longstanding tenets of common-law criminal
9  jurisprudence: that the 'truth of every accusation' against a defendant 'should afterwards be
10 confirmed by the unanimous suffrage of twelve of his equals and neighbors,' 4 W.
11 Blackstone, Commentaries on the Laws of England 343 (1769), and that 'an accusation which
12 lacks any particular fact which the law makes essential to the punishment is ... no accusation
13 within the requirements of common law, and it is no accusation in reason.' 1 J. Bishop,
14 Criminal Procedure § 87, p. 55 (2d ed. 1872)"). There is no basis for failing to apply this
15 reasoning to the fact of prior conviction. See Apprendi, 530 U.S. at 505 (Thomas, J.,
16 concurring); accord Almendarez-Torres, 523 U.S. at 248-60 (Scalia, J., dissenting).

17 The Fifth Amendment of the United States Constitution "requires that a defendant be
18 convicted only on charges considered and found by a grand jury." United States v. Du Bo,
19 186 F.3d 1177, 1179 (9th Cir. 1999). An indictment's failure to allege an essential elements
20 of the charged offense "is not a minor or technical flaw subject to harmless error analysis, but
21 a fatal flaw requiring dismissal of the indictment." Id. In Du Bo, the indictment failed to
22 allege an implied *mens rea* requirement. That failure was fatal to the indictment. See Id., at
23 1179-81. "The complete failure to charge an essential element of a crime ... 'is by no means
24 a mere technicality.'" Id., at 1180 (quoting United States v. King, 587 F.2d 956, 963 (9th Cir.
25 1978)).

26 Due to the lack of the requisite *mens rea*, the Ninth Circuit found that the indictment
27 was defective in two fundamental ways. First, because it lacked an element, the Du Bo court
28 could not be sure that the jury convicted on the same facts presented to the Grand Jury. Id.,

12

at 1179. The <u>Du Bo</u> court could "only guess whether the grand jury received evidence of, and actually passed on, <u>Du Bo</u>'s intent." <u>Id.</u> Second, absent the *mens rea* allegation, the indictment "lacks a necessary allegation of criminal intent, and as such does not 'properly allege an offense against the United States.'" <u>Id.</u>, at 1180 (quoting <u>United States v. Morrison</u>, 536 F.2d 286, 289 (9th Cir. 1976)). A complete failure to allege an element is generally a fatal defect. <u>Id.</u> In <u>Du Bo</u>, the Ninth Circuit held that the failure to allege the mens rea requirement was such a defect. <u>Id.</u> It therefore ordered the indictment dismissed. <u>Id.</u>, at 1180-81.

The Ninth Circuit reiterated the holding that "indictment's failure to 'recite an essential element of the charged offense is not a minor technical flaw. . . but a flaw requiring dismissal of the indictment.'" <u>United States v. Pernillo Fuentes</u>, 252 F.3d 1030 (9th Cir.2001), citing <u>United States v. Du Bo</u>, 186 F.3d 1177, 1179 (9th Cir. 1999). In <u>Pernillo Fuentes</u>, the government charged the defendant with attempted entry, but did not allege the specific intent element as required by <u>Gracidas-Ulibarry</u>, 231 F.3d 1188 (9th Cir. 2000 (<u>en banc</u>). As a consequence, the Ninth Circuit reversed <u>Pernillo Fuentes</u>' conviction and ordered that the indictment be dismissed.

The indictment here is defective because it fails to allege that Mr. Delgado was deported subsequent to an <u>aggravated felony</u> (or any felony) Thus, the indictment as returned clearly fails to charge a violation of section 1326(b). Mr. Lara requests that the indictment be dismissed due to this structural omission for failing to allege an element of the offense, <u>i.e.,</u> that he was deported or removed subsequent to and <u>aggravated felony</u> (any felony). In the alternative, if Mr. Lara is forced to proceed to trial based on the indictment as it exists and he is convicted, the conviction would be limited to a conviction under section 1326(a) which provides a maximum sentence of two years. Because the government has not alleged either a section 1326(b)(1) or 1326(b)(2), the maximum that Mr. Lara should receive at sentencing is two years.

IV.

**MOTION FOR LEAVE TO FILE FURTHER MOTIONS**

Mr. Lara has filed all motions he deems to be relevant at this time. However, he requests permission to reserve the right to file further motions in response to additional discovery, investigation or documents filed by the government, including his recorded statements, his A-file and recorded deportation hearing. As previously noted, although counsel received a telephone call from the U. S. attorney's office indicating that discovery was ready to be picked up yesterday, March 17th, it was still not available at 4:00 p.m. when we went to retrieve it.

V.

**CONCLUSION**

For the above stated reasons, it is respectfully requested that the Court grant the above motions.

Respectfully submitted,

Dated: March 18, 2008

/s/ Sylvia Baiz
**SYLVIA BAIZ**
Attorney for Defendant **Lara**