1  KAREN P. HEWITT
   United States Attorney
2  CHRISTINA M. McCALL
   Assistant U.S. Attorney
3  California State Bar No. 234139
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-6760

6  Attorneys for Plaintiff
   United States of America
7

8              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF CALIFORNIA
9

10 UNITED STATES OF AMERICA,           )   Criminal Case No. 08CR0443-WQH
                                       )
                                       )   Date:  April 1, 2008
11          Plaintiff,                 )   Time:  2:00 p.m.
                                       )
12                                     )   **UNITED STATES' RESPONSE AND**
                                       )   **OPPOSITION TO DEFENDANT'S**
13                                     )   **MOTIONS TO:**
            v.                         )   **(1)   COMPEL DISCOVERY**
14                                     )   **(2)   DISMISS INDICTMENT**
                                       )
15 ALBERTO JACOBO-LARA,                )   **TOGETHER WITH STATEMENT**
                                       )   **OF FACTS, MEMORANDUM OF**
16          Defendant                  )   **POINTS AND AUTHORITIES**
                                       )
17

18
        Plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt,
19
   United States Attorney, and Christina McCall, Assistant United States Attorney, hereby files its
20
   Response and Opposition to Defendant's above-referenced motions. This Response and Opposition is
21
   based upon the files and records of the case together with the attached statement of facts and
22
   memorandum of points and authorities.
23
                                              **I**
24
                                **STATEMENT OF THE CASE**
25
        On February 20, 2008, a federal grand jury in the Southern District of California returned a one-
26
   count indictment against Defendant Alberto Jacobo-Lara ("Defendant"). The Indictment charges
27
   Defendant with one count of being a previously-deported alien who was found in the United States
28
   without permission, in violation of 8 U.S.C. § 1326(a) and (b). After arraigning Defendant on February
   21, 2008, the Court set a motion hearing date for April 1, 2008.

On March 18, 2008, Defendant filed the above-captioned motions. The United States files the following response.

## II

## STATEMENT OF FACTS

**A.    Criminal and Immigration History**

On August 24, 2000, Defendant was convicted of lewd and lascivious acts with a child under the age of 14, and was sentenced to three years in state prison. On September 9, 2003, Immigration Judge James ordered Defendant removed to Mexico. Initially, Defendant filed a notice of appeal with the Board of Immigration Appeals, but Defendant withdrew his appeal on December 15, 2003. Defendant was removed through the Calexico port of entry on January 9, 2004.

**A.    The Offense Conduct**

On January 23, 20008, around 4:00 p.m., Defendant drove an 18-wheel tractor-trailer into a California Highway Patrol ("CHP") inspection site in the southbound lanes of Interstate 5 freeway near San Onofre. The CHP officer conducting the initial inspection noticed that Defendant's log book was not current, and that Defendant may have exceeded the maximum number of driving hours. The officer also noticed a juvenile passenger who appeared to be younger than 17 years old. Defendant claimed the juvenile was his nephew, and that the juvenile was 17 years old. Defendant said that he and the juvenile began the trip in Stockton earlier in the day.

Officers conducted a criminal warrant check on Defendant and learned that Defendant was required to register with the state of California as a sexual offender, and was probably not in compliance with the registration requirements. After confirming that Defendant had not registered as required, CHP officers placed him under arrest for violating California Penal Code § 290(g)(2). At about 5:52 p.m., Officer Sablan advised Defendant that he was under arrest for violating section 290(g)(2) and notified Defendant of his <u>Miranda</u> rights. Defendant indicated that he understood his rights, and said he did not want to speak answer Officer Sablan's questions at that time. Defendant did not say that he refused to speak to any other law enforcement officer, nor did he said that he requested the presence of an attorney before questioning. No further interviews took place by CHP officers.

Officer Sablan phoned United States Border Patrol agents, who determined that Defendant was a Mexican citizen who was removed from the United States on January 9, 2004. Immigration and Customs Enforcement ("ICE") Special Agent Pryor determined that Defendant had not received official permission to return to the United States. On January 25, 2008, Magistrate Judge Adler signed a complaint and issued arrest warrant for Defendant, finding probable cause to believe that he had violated 8 U.S.C. § 1326. That day, ICE agents went to the San Diego County Vista Detention Center to execute the federal arrest warrant, and transported Defendant to the San Ysidro Port of Entry.

At the port, an ICE agent informed Defendant that he was arrested for violating 8 U.S.C. § 1326. The agent advised Defendant of his Miranda rights in English. Defendant indicated that he understood his rights, and agreed to answer questions without a lawyer present. The interview lasted less than fifteen minutes. Defendant admitted he was a Mexican citizen, born in Mexicali, Baja California. Defendant admitted that he did not have the proper documentation to enter or remain in the United States. Defendant acknowledged that he was ordered deported by an immigration judge. Defendant admitted that he re-entered the United States through the Calexico port of entry shortly after his deportation. Defendant said he used his old Resident Alien card, which he admitted he never returned after being deported. Defendant admitted that he was fully aware that he was not entitled to possess or utilize the resident alien card. Defendant admitted that he had not applied for or received permission to re-enter the United States.

### III

**THE UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS**

**A.   ORDER COMPELLING DISCOVERY IS UNNECESSARY**

   No Order is Required; The United States is Complying With Discovery Obligations

The United States has produced 134 pages of discovery as of the filing of this response, as well as a digital video recording of Defendant's post-arrest Miranda warnings and interview and tape recordings of Defendant's removal hearing. The majority of the discovery was produced on March 17, 2008. The United States has complied and will continue to comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500), and Federal Rule of Criminal

1  Procedure 16. Because the United States has complied and will comply with its discovery obligations, an order to compel discovery is unwarranted and the request for such an order should be denied.

### 1--Defendant's Statements

The United States has already provided defense counsel with incident reports detailing Defendant's statements, as well as a DVD recording of his post-arrest interview.

### 2--Reports

The government has already produced all the investigative reports that exist to date.

### 3--Prior Arrests/ Prior Bad Acts

Defendant is in the best position to know his own past encounters with law enforcement. The government has already provided him with a copy of his rap sheet, and will provide ample notice under Rule 404(b) or Rule 609 if it intends to use any prior acts evidence at trial.

### 4--Evidence Seized

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that are within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

### 5--Reports

This request appears to duplicate the request in the second category of the discovery motion.

### 6--Personnel Files of Interviewing Agent

The United States will comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002)(citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted to the Court for an in camera inspection and review.

1  Henthorn expressly provides that it is the "government," not the prosecutor, which must review
2  the personnel files. Henthorn, 931 F.2d at 30-31. Accordingly, the United States will utilize its typical
3  practice for review of these files, which involves requesting designated representatives of the relevant
4  agencies to conduct the reviews. The United States opposes the request for an order that the prosecutor
5  personally review the personnel files.

6  7--Co-Conspirator Statements
7  The United States is unaware of any statements made by any other uncharged co-conspirators

8  8--Recorded Statements
9  Defendant received a DVD containing his interview.

10  9--Addresses of Government Witnesses
11  The United States will provide the names of the witnesses it intends to call at trial. Defendant
12  has already received access to the names of potential witnesses through the discovery sent to his counsel.
13  The United States strongly objects to Defendant's request for witness addresses. None of the cases cited
14  by Defendant, nor any rule of discovery, requires the United States to disclose witness addresses. The
15  United States does not know of any individuals who were witnesses to Defendant's offenses except the
16  law enforcement agents who apprehended him, his sister and the material witnesses. The names of these
17  individuals have already been provided to Defendant.

18  10--Evidence Seized
19  This request appears to duplicate category four. Agent Pryor returned Defendant's personal
20  property to his court-appointed counsel on February 8, 2008.

21  11--Scientific Reports
22  In advance of trial, the Government will turn over any scientific reports and identify any experts
23  it intends to call at trial.

24  12--Promises to Witnesses
25  Notwithstanding the mysterious reference to income tax liability, there are no secret promises
26  made to potential government witnesses in this case that have not been produced as discovery.

27  13--Advice About Contemplated Prosecution
28  This request is vague, and inapplicable to this case.

1      14--Bias of Witness Against Defendant

2      Under Brady, any information that a witness was biased against Defendant would be provided,
3 but no such information exists at this time.

4      15/16--Conviction/Investigation of Government Witness

5      Under Brady and Henthorn any information that a witness was has a criminal conviction or is
6 the target of an investigation that would call the witness' credibility into question would be provided,
7 but no such information exists at this time.

8      17--Evidence Affecting Perception and Memory

9      The United States is unaware of any evidence that any government witness's physical ability to
10 perceive, recollect or communicate or commitment to tell the truth is impaired.  The United States
11 opposes the request for information that a witness has ever used narcotics or other controlled substance,
12 or has ever been an alcoholic.  This request is overly broad and ignores the standard of materiality set
13 forth in Brady for exculpatory or impeachment information.

14      18--Name and Address of Non-Witnesses

15      This request is over-broad and inapplicable in this case.

16      19--Addresses of Witnesses

17      This request repeats number nine.

18      20--Names of Favorable Witnesses

19      Again, the names of all potential adult witnesses have been amply explained in the over 130
20 pages of discovery.  Out of concern for the safety of the juvenile in Defendant's truck, his identifying
21 information has been redacted from incident reports.  Defendant remains in the best position to know
22 the juvenile's name.

23      21--Grand Jury Transcripts

24      The agent who testified before the grand jury will not testify at trial.  This request is moot.

25      22--Jencks Material

26      The United States has or will comply with the disclosure requirements of the Jencks Act.  For
27 purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or
28 otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded

1 transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18
2 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act
3 if the statements are adopted by the witness, as when the notes are read back to a witness to see whether
4 or not the government agent correctly understood what the witness was saying. United States v. Boshell,
5 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). By the
6 same token, rough notes by an agent "are not producible under the Jencks Act due to the incomplete
7 nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

**B.    THE INDICTMENT SHOULD NOT BE DISMISSED; DEFENDANT WAS PROPERLY CHARGED**

Defendant moves to dismiss the Indictment, arguing that Almendarez-Torres v. United States, 523 U.S. 224 (1998) should be overruled, and that the special allegation that Defendant was deported subsequent to an aggravated felony should have been included. This argument has been squarely rejected by the Ninth Circuit. See United States v. Covian-Sandoval, 462 F.3d 1090, 1096-97 (9th Cir. 2006) (citing United States v. Beng-Salazar, 452 F.3d 1088 (9th Cir. 2006); United States v. Diaz-Argueta, 447 F.3d 1167, 1170 (9th Cir. 2006); United States v. Rodriguez-Lara, 421 F.3d 932, 949-50 (9th Cir. 2005)). The Indictment properly alleges Defendant's violation of 8 U.S.C. 1326(a) and (b) and alleges that Defendant was removed after the date of his prior aggravated felony conviction.

**C.    UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY**

Defendant has invoked Fed. R. Crim. P. 16(a) and the United States has voluntarily complied with the requirements of Rule 16(a). Therefore, provision 16(b) of that rule, requiring reciprocal discovery, is applicable. The United States hereby requests Defendant to permit the United States to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody or control of Defendant and which he intends to introduce as evidence in his case-in-chief at trial.

The United States further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of Defendant, which he intends to introduce as evidence-in-chief at the trial or which were prepared by a witness whom Defendant intends

to call as a witness. The United States also requests that the court make such orders as it deems necessary under Rule 16(d)(1) and (2) to insure that the United States receives the discovery to which it is entitled.

Federal Rule of Criminal Procedure 26.2 requires the production of prior statements of all witnesses, except Defendant. The time frame established by the rule requires the statement to be provided after the witness has testified, as in the Jencks Act. The United States hereby requests that Defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the court. This order should include any form these statements are memorialized in, including but not limited to, tape recordings, handwritten or typed notes and/or reports.

### D.   MOTION TO COMPEL FINGERPRINT EXEMPLARS

As part of its case, the United States must prove that Defendant was previously deported from the United States. To prove this element, the United States anticipates calling a certified fingerprint examiner to testify that Defendant is the individual whose fingerprint appears on the warrants of deportation and other deportation documents. A number of chain of custody witnesses could be eliminated, and judicial resources conserved, by permitting the Government's expert to take Defendant's fingerprints himself. The Defendant's fingerprints are not testimonial evidence. See Schmerber v. California, 384 U.S. 757 (1966). Further, using identifying physical characteristics, such as fingerprints, does not violate Defendant's Fifth Amendment rights against self-incrimination. United States v. DePalma, 414 F.2d 394, 397 (9th Cir. 1969); Woods v. United States, 397 F.2d 156 (9th Cir. 1968); see also, United States v. St. Onge, 676 F. Supp. 1041, 1043 (D. Mont. 1987). Accordingly, the Government requests that the Court order that Defendant make himself available for fingerprinting by the Government's fingerprint expert.

//

//

//

**V**

**CONCLUSION**

For the above stated reasons, the United States respectfully requests that Defendant's motions be denied and it's reciprocal discovery motion be granted.

DATED: March 30, 2008

                                                Respectfully submitted,

                                                KAREN P. HEWITT
                                                United States Attorney

                                                /s/ ***Christina M. McCall***

                                                CHRISTINA M. McCALL
                                                Assistant U.S. **Attorney**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Case No. 08CR0443-WQH |
| Plaintiff, | ) | |
| | ) | CERTIFICATE OF SERVICE |
| v. | ) | |
| ALBERTO JACOBO-LARA, | ) | |
| Defendant. | ) | |

**IT IS HEREBY CERTIFIED that:**

I, CHRISTINA M. McCALL, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Sylvia Baiz

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 30, 2008

                                        /s/ ***Christina M. McCall***
                                        CHRISTINA M. McCALL