1  **SYLVIA BAIZ**
   California Bar No. 124367
2  The Granger Building
   964 Fifth Avenue, Suite 214
3  San Diego, California  92101
   Telephone:  (619) 544-1410
4  Facsimile: (619) 544-1473

5  Attorney for Defendant **Lara**

6

                    UNITED STATES DISTRICT COURT
7
                 SOUTHERN DISTRICT OF CALIFORNIA
8
                    **(HON. WILLIAM Q. HAYES)**
9

10 **UNITED STATES OF AMERICA**,          )  Criminal No.  **08-CR-0443-WQH**
                                          )
11        Plaintiff,                      )  Date: June 2, 2008
                                          )  Time: 2:00 p.m.
12 v.                                     )
                                          )  **STATEMENT OF FACTS AND**
13 **ALBERTO JACOBO LARA,**               )  **AUTHORITIES IN SUPPORT OF**
                                          )  **DEFENDANT'S MOTIONS**
14                                        )
          Defendant.                      )
15 _____ )

16                                  **I.**

17                         **STATEMENT OF FACTS**

18        Mr. Lara was arrested on January 23, 2008 at the California Highway patrol (CHP)

19 San Onofre truck inspection facility. The CHP arrested Mr. Lara "...for failure to register as a

20 sex offender." Mr. Lara made incriminating statements, even though he had not been advised

21 and invoked his rights to remain silent pursuant to Miranda upon his arrest and detention at

22 the truck inspection facility. The border patrol was immediately notified by the CHP

23 regarding Mr. Lara's arrest and learned that he had been deported.  On that same day, Special

24 Agent Pryor of the U. S. Immigration and Customs Enforcement informed the CHP of Mr.

25 Lara's true identity and that "he was in the custody of Department of Homeland Security.

26 Special Agent Pryor informed me that due to addition information received from ___(blacked

27 out), Lara was being investigated for possible charges of human trafficking and child

28 molestation."  See exhibit A.  Agent Pryor simultaneously with Mr. Lara's arrest and booking

   in the Vista Jail placed a "Hold" on Mr. Lara.  See exhibit B.

No charges were filed in the state courts, Mr. Lara was released to Agent Pryor on January 25, 2008 and was driven to the San Ysidro port of entry.    Agents informed Mr. Lara that if he agreed to answer their questions, his sentenced would be reduced because they would inform the court of his cooperation with the investigation. See exhibit C, Mr. Lara's declaration.  An arrest warrant was two days later on, January 25, 2008.  Mr. Lara was brought to federal court on January 28, 2008 to face charges that he was found in the United States in violation of 8 U.S.C. §1326(b).

**II.**

## MOTION TO DISMISS THE INDICTMENT BECAUSE THE UNDERLYING DEPORTATION VIOLATED LARA'S CONSTITUTIONAL RIGHTS

Mr. Lara has a "Fifth Amendment right to collaterally attack his removal order in the criminal proceeding 'because the removal order [could serve] as a predicate element of his conviction.'" United States v. Ortega-Ascanio, 376 F.3d 879, 886 (2004) (quoting United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1047 (9th Cir. 2004); United States v. Mendoza-Lopez, 481 U.S. 828, 837-38, 95 L. Ed. 2d 772, 107 S. Ct. 2148 (1987) ("Our cases establish that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding."); United States v. Pallares-Galan, 359 F.3d 1088, 1095 (9th Cir. 2004)("Because the underlying order serves as a predicate element of an illegal reentry offense under § 1326, a defendant charged with that offense may collaterally attack the removal order under the due process clause.").

To sustain a collateral attack under § 1326(d), a defendant must, within constitutional limitations, demonstrate (1) that he exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) that the entry  of the order was fundamentally unfair. 8 U.S.C. §  1326(d).

2

Ubaldo-Figueroa, 364 F.3d at 1048.  Mr. Lara's case meets all three requirements.

**A.    The Exhaustion Requirement Is Excused Because the Immigration Judge Did Not Inform Mr. Lara that He Was Eligible For Relief From Deportation and Mr. Lara's Waiver of His Right to Appeal Was Not Considered And Intelligent**

As set forth in the following section, Mr. Lara was eligible for relief from deportation under INA § 245(a) as he was a lawful permanent resident of the United States and was then and continues to be married to a United States citizen– Pamela Lara..  He was never advised, however, by the Immigration Judge (IJ) of the possibility of relief.  In fact, he was advised of no relief whatsoever.

Mr. Lara is exempted from the exhaustion requirement in 8 U.S.C. § 1326(d)(1) because the IJ did not inform him that he was eligible for relief from deportation.... We do not consider an alien's waiver of his right to appeal to be "'considered and intelligent' when 'the record contains an inference that the petitioner is eligible for relief from deportation,' but the Judge fails to 'advise the alien of this possibility and give him the opportunity to develop the issue.'"

Ubaldo-Figueroa, 364 F.3d at 1049-50, quoting United States v. Muro-Inclan, 249 F3d 1180 (9th Cir. 2001), quoting United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000).  The requirement that an IJ must advise an alien of the right to seek relief from removal is "mandatory."  United States v. Arce-Delgado, 163 F.3d 559, 563 (1998). In this case the IJ did not advise Mr. Lara of his right to seek any relief from deportation.  Therefore, he is exempted from the exhaustion requirement.

**B.    Mr. Lara Was Denied Judicial Review of His Removal Proceeding**

In this case, Lara was effectively deprived of his right to judicial review.

[W]here a waiver of the right to appeal a removal order is not "considered and intelligent," an alien has been deprived of his right to appeal and thus to a meaningful opportunity for judicial review.  See United States v. Leon Paz, 340 F.3d 1003, 1005 (9th Cir. 2003).  Effective deprivation of an alien's administrative appeal serves to deprive him of the opportunity for judicial review as well.  Mendoza-Lopez, 481 U.S. at 840 ("Because the waivers of their rights to appeal were not considered or intelligent, respondents were deprived of judicial review of

their deportation proceeding."). <u>Palares-Galan</u>, 359 F.3d at 1096 (holding an alien's procedurally defective waiver of his right to appeal because he was not advised of his right to relief not only excused the exhaustion requirement, but, "for the same reasons," deprived him of a meaningful opportunity for judicial review.).

Here, although Mr. Lara signed a waiver of his appeal before the Board of Immigration Appeals and was subsequently removed from the United States his waiver was not voluntary and intelligent as he had not been informed that he could apply for adjustment of status.   For the same reasons the exhaustion requirement is excused, Mr. Lara was denied judicial review.

Section 245 is the proper statutory framework for adjudicating an application for adjustment of status filed by an alien in deportation proceedings.  8 C.F.R. §§ 240.1(a)(1)(ii), 240.11(a)(1) (2001).   The IJ has exclusive jurisdiction to decide the adjustment of status application.   8 C.F.R. § 245.2(a)(1) (2001).   However, only the INS may adjudicate the underlying I-130 visa petition. 8 C.F.R. § 204.1(e) (2001); <u>Dielmann v. INS</u>, 34 F.3d 851, 854 (9th Cir.1994).   Under Section 245, an alien may be eligible for adjustment of status if, among other prerequisites, an immigrant visa is immediately available.   INA § 245(a);  8 U.S.C. § 1255(a).   One of the ways by which an alien may become eligible to receive an immigrant visa is through marriage to a United States citizen.   INA § 201(b), 8 U.S.C. § 1151(b).   An approved I-130 filed by the spouse satisfies the requirement that a visa is immediately available.  <u>INS v. Miranda</u>, 459 U.S. 14, 15, 103 S.Ct. 281, 74 L.Ed.2d 12 (1982).   Once approved, the I 130 remains valid for the legal duration of the marriage.  8 C.F.R. § 204.2(h)(1) (2004). See exhibit C, Marriage certificate.

## C.    The Entry of the Order Removing Lara Was Fundamentally Unfair

"An underlying removal order is 'fundamentally unfair' if (1) an alien's 'due process rights were violated by defects in the underlying deportation proceeding,' and (2) he suffered prejudice as a result of the defects.'" <u>Palares-Galan</u>, 359 F.3d at 1095 (quoting <u>United States v. Garcia-Martinez</u>, 228 F.3d 956, 960 (9th Cir. 2001).  Mr. Lara can demonstrate both of these elements.

### 1.    Mr. Lara's Due Process Rights Were Violated

It is a violation of due process when an IJ erroneously advises a respondent that he or she is not eligible for any relief from deportation. United States v. Leon-Paz, 340 F.3d 1003, 1007 (9th Cir. 2003) (where an alien was eligible for relief from deportation, and was given advice to the contrary, his due process rights were violated); United States v. Saldivar-Vargas, 290 F.Supp. 1210, 1214 (S.D. Cal. 2003) (same).  In this case the IJ failed to inform Mr. Lara that he was eligible for relief from deportation, violating Mr. Lara's right to due process.

Furthermore, although Mr. Lara's family had obtained the services of an attorney, the attorney failed to file any form of relief on Mr. Lara's behalf and the IJ summarily deported him. The deportation hearing tape reveals that on September 9, 2003, the immigration court ordered Mr. Lara's deportation as no applications for relief from deportation had been filed. " 'Ineffective assistance of counsel in a deportation proceeding is a denial of due process under the Fifth Amendment if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case.' " Hernandez v Mukasey , --- F.3d ----, 2008 WL 1885753 (9th Cir. 2008) citing Lopez v. INS, 775 F.2d 1015, 1017 (9th Cir.1985). Federal law guarantees an individual the opportunity to obtain counsel of his own choice in "any removal proceedings before an immigration judge."8 U.S.C. § 1362.  The Ninth Circuit has found that this statutory right stems from the Fifth Amendment's guarantee of due process in deportation proceedings. See Ray v. Gonzales, 439 F.3d 582, 587 (9th Cir.2006). Thus, if an individual chooses to retain counsel, his or her due process right "includes a right to competent representation." Id. (italics in original). If counsel'sassistance is deficient, and prejudice can be shown, we have recognized an ineffectiveassistance of counsel claim in removal proceedings.  Hernandez v. Mukasey. supra at 6.

### 2.    Mr. Lara Can Demonstrate Prejudice

To prevail on this motion Mr. Lara must demonstrate not only that his due process rights were violated, but also that he suffered prejudice as a result.

To prove prejudice, [Mr. Lara] need not show that he actually would have been granted relief; rather, he must show only that he had a "plausible basis" for seeking relief from

deportation.  United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir.2000).  1079.  Specifically, he is entitled to the dismissal of his indictment if, upon a review of the record, it appears that an IJ could have concluded that his potential claim for relief from deportation would be "plausible." Palares-Galan, 359 F.3d at 1103-1104.

Mr. Lara was eligible for adjustment of status and such relief is statutorily allowed at the person's deportation hearing. In the instant case Mr. Lara was and is married to a United States citizen–he was statutorily eligible for adjustment of status under section 245(a).  It is clear that he was denied Due Process by both the immigration court and by the ineffective assistance of counsel of his immigration attorney equally.

The government may argue that in any event Mr. Lara had been previously convicted of an aggravated felony–a violation of California Penal Code section 288(a)–defined as sexual abuse of a minor.   However, an "aggravated felony" is not a ground of inadmissibility under section 212(a) of the Act which would have precluded his admission had been be granted adjustment of status.  Moreover, would have been excludable (that is inadmissible) due to the fact that he was previously convicted of a crime of moral turpitude– a violation of Penal Code section 288(a).  However, a waiver in conjunction with adjustment of status is allowed for crimes of moral turpitude. Under  Title 8 U.S.C. §212(h) allows the Attorney General the discretion to grant relief from deportation in the event that an alien shows that his or her deportation would cause "extreme hardship to a spouse, parent or child who permanently resides in this country."  Not only is Mr. Lara married to a U. S. citizen, but he also has three U. S. citizen children between the ages of 12 and 19.

Furthermore, although 212(h) provides that an alien who has been convicted of an aggravated felony is barred from applying for a 212(h) waiver, the Fifth Circuit has recently held that the statutory bar does not apply to aliens who adjust post-entry to LPR status. [1]  Martinez

---

[1] Noncitizens are *not* eligible for the waiver if they have "previously been *admitted* to the United States as an alien lawfully admitted for permanent residence [*i.e.,* an LPR] if ... since the date of such admission the alien has been convicted of an aggravated felony". 8 U.S.C. § 1182(h) (emphasis added).

v. Mukasey 519 F.3d 532 (5th Cir. 2008). The Court reasoned that § 212(h)'s plain language demonstrates unambiguously Congress' intent *not* to bar persons who adjust to LPR status post-entry from *seeking* a waiver of inadmissibility. Therefore, under § 212(h), Martinez was eligible to seek a discretionary waiver of inadmissibility.

In the instant case, Mr. Lara would qualify for the 212(h) waiver in two ways. First, he was adjusted to LPR status due to his long term residence in 1988. See exhibit E, creation of residence record. Secondly, he could have applied for adjustment of status through his U. S. citizen wife and applied for a waiver under 212(h) after his adjustment of status was accomplished, both of which would have been after he suffered his conviction for an aggravated felony. Because he was denied due process at his immigration hearing and because he could applied for a waiver under 212(h) of the Act, Mr. Lara was prejudiced and the indictment should be dismissed as it is based on an invalid deportation.

**III.**

### DEFENDANT'S STATEMENTS SHOULD BE SUPPRESSED BECAUSE THEY WERE TAKEN IN VIOLATION OF HIS FIFTH AND SIXTH AMENDMENT RIGHTS

Custodial interrogation conducted to secure incriminating statements from an accused must be preceded by procedural safeguards. Miranda v. Arizona, 348 U.S. 437 (1966). Once a person is in custody, Miranda warnings must be given before any interrogation. "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to . . . counsel." Miranda v. Arizona, 384 U.S. at 475. No evidence or statement obtained through a custodial interrogation may be used at trial unless and until the government demonstrates that the defendant received Miranda warnings prior to the statement and validly waived her or his rights. Id. 384 U.S. at 479.

In both Moran v. Burbine, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) and Colorado v. Spring, 479 U.S. 564, (1987), the Supreme Court emphasized the high level of proof required to show a free and voluntary waiver of Miranda. Id., 479 U.S. at 573, quoting Moran v. Burbine, 475 U.S. at 421. This Court must "indulge every reasonable presumption against

1  waiver" of Miranda rights.  United States v. Heldt, 745 F.2d 1275, 1277 (9th Cir. 1984).  The

2  validity of the waiver "depends . . . 'upon the particular facts and circumstances surrounding [the]

3  case, including the background, experience and conduct of the accused.'"  Edwards v. Arizona,

4  451 U.S. 477, 482, reh'g denied, 452 U.S. 973 (1981) (quoting Johnson v. Zerbst, 304 U.S. 458,

5  464 (1938)).

6        In addition to proving Miranda warnings and a valid waiver, the government must also

7  establish, by a preponderance of evidence, that any statement was given voluntarily.  Lego v.

8  Twomey, 404 U.S. 477, 484 (1972).  This is a separate requirement:  a confession admitted in

9  violation of Miranda violates a defendant's Fifth Amendment right against self-incrimination and

10  his Sixth Amendment right to counsel; a coerced confession also violates a defendant's right to

11  due process of law.  See Jackson v. Denno, 378 U.S. 368, 376 (1964).

12        A voluntary statement is one which is the product of a "rational intellect" and a "free

13  will."  Blackburn v. Alabama, 361 U.S. 199, 208 (1960).  No one factor is determinative.

14  Rather, this Court must look to the "totality all of the surrounding circumstances." Schneckloth

15  v. Bustamonte, 412 U.S. 218, 226 (1973).  Among the many factors which the Court can weigh

16  is the age of the accused, his education and intelligence, advice as to constitutional rights, length

17  of detention, repeated and prolonged nature of the questioning and use of physical punishments.

18  412 U.S. at 226.  A statement may not be admitted if because of mental illness, drugs, or

19  intoxication, the statement was not the product of a rational intellect and a free will.  Gladden

20  v. Unsworth, 396 F.2d 373, 380-81 (9th Cir. 1968).

21        When law enforcement officers use psychological pressure to break down the will of an

22  accused, all statements elicited thereby are deemed involuntary.  See Spano v. New York, 360

23  U.S. 315 (1959).  A confession is involuntary whether it occurs by physical intimidation or

24  psychological pressure. Townsend v. Sain, 307 U.S. 293 (1963). Subtle psychological coercion,

25  either by promises of leniency or indirect threats, may also render a confession involuntary.

26  United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981).

27        In the instant case, agents told Mr. Lara that they would recommend that his sentence be

28  reduced if he cooperated and agreed to answer their questions.  This type of psychological

8

pressure made his statements to agents involuntary and in violation of the Fifth Amendment.

An evidentiary hearing in this matter is necessary. <u>United States v. Batiste</u>, 868 F.2d 1414 (9th Cir. 1989) (holding that a district court has complete discretion to hold an evidentiary hearing whenever a Fourth Amendment violation is alleged and in footnote 5, implying that an evidentiary hearing <u>must</u> be held if a Fifth Amendment violation is alleged).

In addition, Title 18 U.S.C. §3501 requires a hearing on voluntariness prior to the admission of any defendants' statement.

## IV.

**THE 72-HOUR DELAY THAT MR. LARA SUFFERED PRIOR TO BEING TAKEN BEFORE A MAGISTRATE FOR AN INDEPENDENT DETERMINATION OF PROBABLE CAUSE VIOLATES THE DUE PROCESS CLAUSE OF THE FOURTH AMENDMENT AND RULE 5(a) AND THE INDICTMENT SHOULD BE DISMISSED, OR IN THE ALTERNATIVE ALL FRUITS OF THE ILLEGAL CONDUCT SHOULD BE SUPPRESSED**

As set out above, Mr. Lara was arrested on January 23, 2008, at about 4:00 p.m. by CHP officers. His arrest was not presented to a magistrate judge for a probable cause determination and arrest warrant until January 25, 2008 and he was not brought before the magistrate until January 28, 2008. There was no reason for this delay all of his statements should be suppressed.

In <u>Gerstein v. Pugh</u>, 420 U.S. 103, 124-25 (1975), the Supreme Court held that the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to extended <u>detention</u> following a warrantless arrest. Subsequently, in <u>County of Riverside v. McLaughlin</u>, 500 U.S. 44, 56 (1991), the Supreme Court held that "judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of <u>Gerstein</u>." The Court, however, emphasized that delays less than 48 hours may be held unreasonable:

> [t]his is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours. Such a hearing may nonetheless violate <u>Gerstein</u> if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. Examples of unreasonable delay are <u>delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake.</u>

1    Id. (emphasis added).  The 48-hour rule is thus not dispositive of whether a delay is

2    reasonable.  Rather, its significance is that it shifts the burden to the government "to

3    demonstrate the existence of a bona fide emergency or other extraordinary circumstance."

4    Id. at 57.  Here, Mr. Lara's case was not presented to a magistrate judge within 48 hours.

5    There is no justifiable reason for this delay.  Thus, any statements should be suppressed.  See

6    Anderson v. Calderon, 232 F.3d 1053, 1070-71 (9th Cir. 2000) (holding that suppression is

7    an appropriate remedy for violation of Gerstein rule).

8    **Alternative Remedy**

9          As set out above, Mr. Lara was arrested at about January 23, 2008 at about 4:00 p.m.  He

10   was not taken before a magistrate judge until some time on January 28, 2008, five days after his

11   arrest.  There was no reason for this delay.

12         Pursuant to Federal Rule of Criminal Procedure 5(a), "a person making an arrest within

13   the United States must take the defendant without unnecessary delay before a  magistrate judge

14   . . . ."  (2004).  "Courts look to 18 U.S.C. §3501(c) to determine whether pre-arraignment

15   statements obtained in violation of Rule 5(a) are admissible."  United States v. Van Poyck, 77

16   F.3d 285, 288 (9th Cir. 1996).  Under §3501(c), if the statements were made within six hours of

17   arrest, they will not be excluded solely because of pre-arraignment delay.  Id.  In other words,

18   §3501(c) creates a six-hour "safe harbor" period that immunizes the admissibility of the

19   statements from an attack based on pre-arraignment delay.  Id.   Mr. Lara's statements on

20   January 25th are far outside the safe harbor.

21         Of course, post-arrest statements made outside of the six-hour safe harbor period are not

22   automatically inadmissible.  In order to determine whether such statements are inadmissible, the

23   Ninth Circuit has articulated two different tests.  See Van Poyck, 77 F.3d at 288-89 (noting the

24   intra-circuit conflict);   United States v. Alvarez-Sanchez, 975 F.2d 1396, 1404-05 (9th Cir.

25   1992) (same), rev'd on other grounds, 511 U.S. 350 (1994).  These recognize:

26         [i]n one line of cases, [the Ninth Circuit has] looked to the reasonableness of
           the delay; if it is reasonable, the statement is admissible.  In another line, [the
27         Ninth Circuit has] looked to public policy concerns such as discouraging
           officers from unnecessarily delaying arraignments, preventing admission of
28         involuntary confessions, and encouraging early processing of defendants; if

1    public policy favors admission, the statement is admissible.

2    Van Poyck, 77 F.3d at 289 (citations omitted).

3         Under either test, the government violated Fed. R. Crim. P. 5. First, as to reasonableness,

4    there was no reason Mr. Lara could not have been promptly taken before a magistrate judge

5    shortly after his arrest, considering the proximity of the federal courthouse to where he was

6    detained.

7         Accordingly, Mr. Lara requests that the Court dismiss the indictment. See United States

8    v. Osunde, 638 F. Supp. 171, 175-76 (N.D. Cal. 1986) (approving dismissal for violation of Rule

9    5(a)). Alternatively, he requests that the Court suppress statements.

10

11    V.
    **THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM INTRODUCING**

12        **EVIDENCE UNDER FEDERAL RULES OF EVIDENCE 404(B) AND 609**

13

14    **A.**     **Exclusion of Other Acts Evidence Under Rule 404(b), 403.**

15         Federal Rule of Evidence 404(b) requires that the government provide "reasonable notice

16
17    in advance of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce. Fed.

18    R. Evid. 404(b). Notice is a condition precedent to admission of other acts evidence. Fed. R.

19    Evid 404(b), 1991 Advisory Committee Notes. Timely notice of such evidence is also critical

20    so that Mr. Lara may adequately prepare his defense. Because the Government has failed to

21
22    provide adequate notice of other crimes, wrongs, or acts allegedly committed by Mr. Lara that

23    it plans to introduce at trial, this Court should exclude any evidence the Government will seek

24    to introduce under Rule 404(b).

25
26         Moreover, because the Government carries the burden of showing how any other acts

27    evidence is relevant to one or more issues in the case, "it must articulate precisely **the evidential**

28    **hypothesis** by which a fact of consequence may be inferred from the other acts evidence."

11

United States v, Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (citing United States v. Hernandez-Miranda, 601 F.2d 1104, 1108 (9th Cir. 1979)) (emphasis added); accord United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993).  Because the Government has failed to articulate the precise evidential hypothesis by which a fact of consequence will be shown by any such 404(b) evidence, it must be excluded under Fed. R. Evid. 401, 404(b), 403.

**B.**    **Exclusion of Prior Convictions to Impeach Witness Under Rule 609.**

Furthermore, Fed. R. Evid. 609 limits the use of prior convictions to impeach a witness. The discovery material makes reference to prior convictions of Mr. Lara.  The Government should be precluded from introducing any evidence of these convictions, as they are irrelevant under Fed. R. Evid. 401 and 609 and prejudicial under Fed. R. Evid. 403. Reference is made to Mr. Lara's prior conviction in immigration service records as an "aggravated felony".  The specific prior conviction, violation of penal code section 288(a) as well as the characterization as an "aggravated felony" should be precluded this information is irrelevant. Even if Mr. Lara were to testify at trial, the danger of unfair prejudice would substantially outweigh any possible relevance of any of these prior convictions, and so, they should be excluded.  Fed. R. Evid. 401, 403, 609.

To the extent that this Court rules that Mr. Lara's prior convictions are admissible under Fed. R. Evid. 609, this Court should redact any documents and preclude the prosecutor from referring to the crime for which Mr. Lara was convicted, as it would be more prejudicial than probative of his guilt of the charged offense.  The Government has not indicated that it has any intention of attempting to introduce 404(b) evidence.  Rule 404(b) requires that the government

provide "reasonable notice in advance of trial" of any evidence of "other crimes, wrongs, or acts" it plans to introduce. FED. R. EVID. 404(b). The notice requirement is triggered when timely requested by the defendant. United States v. Vega, 188 F.3d 1150, 1154 (9th Cir. 1999). Here, Mr. Lara made timely requested notice of proposed 404(b) evidence. Therefore, given Mr. Lara's request for notice of Rule 404(b) and the Government's indication that it did not intend to introduce any, any such evidence should be excluded.

## VI.
## THIS COURT SHOULD LIMIT THE TESTIMONY OF THE
## DEPT. OF HOMELAND SECURITY(DHS) CUSTODIAN OF RECORDS

It is assumed that the Government will intend to present the evidence of an employee of the DHS who would testify about, "the purpose of the A-file, what documents are contained within the A-File and what those documents mean." Mr. Lara objects to such a witness advising the jury about the significance of the documents that are contained in the A-File. The jurors are the fact finders in this case--it is up to them to decide what evidence is credible and how much weight it should be given. A jury is surely going to give a great deal of weight to the testimony of a Border Patrol agent. However, that agent's testimony about what A-File documents "mean" is completely irrelevant to the factual issues that will be before the jury. Moreover, the Supreme Court held in Crawford v. Washington, 124 S.Ct. 1354 (2004), that pursuant to the Sixth Amendment, pre-trial testimonial statements may not be admitted against a defendant at trial where the defendant has not had the opportunity to cross-examine the declarant. Since the meaning of documents written and prepared by others-- the affidavits and other testimonial statements contained in the A-file--will be the subject of the custodian's testimony, such

13

testimony violates Mr. Lara's confrontation clause rights and should be prohibited.

Furthermore, any testimony elicited by the government regarding computer checks that were performed by government agents violate Mr. Lara's confrontation rights, as no discovery regarding such searches has been produced and Mr. Lara thus has no meaningful way to cross-examine government witnesses regarding such computer searches. Testimony regarding such results would also be irrelevant and overly prejudicial and would constitute hearsay, but would be devoid of the requisite indicia of reliability to be admissible at trial.

## VII.
## THIS COURT SHOULD PRECLUDE THE INTRODUCTION OF THE A-FILE DOCUMENTS TO PROVE ALIENAGE

Notwithstanding the Ninth Circuit's holding in United States v. Lara-Herrera, 273 F.3d 1213, 1217 (9th Cir. 2001), Mr. Lara objects the use of the A-file documents as evidence of his alienage. Such evidence is hearsay in this context and violates Mr. Lara's right of confrontation. Additionally, as outlined above, Crawford v. Washington specifically mandates that testimonial pre-trial statements may not be used against a defendant at trial where the defendant has not had a chance to cross examine the declarant. Thus, no such A-file documents should be introduced against Mr. Lara to prove alienage.

**A.** **The Warrant of Deportation and the Order of Deportation Are Only Admissible to Establish the Fact of the Deportation.**

Mr. Lara expects that the Government will seek to introduce a warrant of deportation and an order of deportation to establish the fact of his deportation. These two documents are admissible **only** to establish the fact of the deportation. See, e.g., United States v. Contreras, 63 F.3d 852, 857 (9th Cir. 1995); United States v. Hernandez-Rojas, 617 F.2d 533, 535-36 (9th Cir.

1980).  Neither the warrant of deportation or the order of deportation reflect the "objective, ministerial fact" of alienage, and so, neither are admissible under Fed. R. Evid. 803(8)(B) to establish the fact of alienage.

Both the warrant of deportation and the order of deportation reflect the ministerial fact of the *deportation*, not Mr. Lara's alienage.  As the Ninth Circuit has explained:

> ***Clearly it would be improper for the government to rely on factual findings from a deportation hearing to prove an element of the crime of illegal reentry, as the burden of proof in a criminal proceeding requires a greater showing by the government than in an administrative hearing.*** The use of a deportation order to prove the element of alienage would allow the government to skirt around the more stringent requirements of a criminal proceeding by relying on that factual finding from the INS proceeding. To put it more simply, the government would demonstrate that Medina is an alien by showing that the INS found that he was an alien.

United States v. Medina, 236 F.3d 1028, 1030, 1031 (9th Cir. 2001) (emphasis added).  Indeed, alienage is not a fact that is observed; it is a fact that is "found" by an immigration official after an administrative hearing.  Because the order of deportation reflects the quintessential "factual finding" rendered after an administrative hearing, it is not admissible under Fed. R. Evid. 803(8) or Fed. R. Evid. 401 to establish the fact of alienage.  Likewise, because the warrant of deportation reflects only that an immigration judge found Mr. Lara to be an alien after an administrative hearing and that Mr. Lara may have been removed from the United States after that deportation, it has no bearing on the fact of alienage, and it is also inadmissible under Fed. R. Evid. 803(8) and Fed. R. Evid. 401 to establish the fact of alienage.[2]  Finally, to the extent that

---

[2] In United States v. Hernandez-Herrera, 273 F.3d 1213, 1217-1218 (9th Cir. 2001), the Ninth Circuit stated summarily that A-file documents are admissible under Fed. R. Evid. 803(8)(B) to establish the fact of alienage.  Because the court failed to set forth any reasoned discussion, because it failed to discuss the decision in Medina, and because it did not specify which documents from the A-file were admitted

this Court finds that these documents are relevant under Fed. R. Evid. 401, these documents should be excluded under Fed. R. Evid. 403.

Thus, because the warrant of deportation and the order of deportation are not admissible to establish the fact of alienage, these documents are admissible only for a limited purpose, and Mr. Lara accordingly requests this Court instruct the jury, pursuant to Fed. R. Evid. 105, that it may only consider these documents to establish the fact of the deportation and for no other purpose.  Mr. Lara further requests that this Court redact these documents to exclude any and all reference to his alleged alienage and/or prior conviction or "aggravated felony."

**B.    None of the Other A-file Documents are Admissible under Any Rule of Evidence.**

Mr. Lara anticipates that the Government may seek to admit other documents from the A-file, including the notice to appear alleging removability and warnings regarding the possible penalties for reentry.  None of these documents from the A-file are admissible to establish any other matter at issue in this trial.

All documents from the A-file -- except the warrant of deportation and the order of deportation, as discussed, supra -- are irrelevant under Fed. R. Evid. 401; more prejudicial than probative, cumulative, and a waste of time under Fed. R. Evid. 403; and inadmissible hearsay

---

in Hernandez-Herrera's case, see id., it is thus not binding authority, and this Court must still address this issue.  See, e.g., Miranda B. v. Kitzhaber, 328 F.3d 1181, 1186 (9th Cir. 2003) (per curiam) (requiring "reasoned consideration in a published opinion" for a "ruling [to] becom[e] the law of the circuit"); United States v. Collicott, 92 F.2d 973, 980 n.4 (9th Cir. 1996) (holding that prior Ninth Circuit case is not binding "in the absence of reasoned analysis and analogous facts").  In any event, Hernandez-Herrera never held that these documents were admissible under Fed. R. Evid. 401 or 403 or the Fifth and Sixth Amendments.  See Webster v. Fall, 266 U.S. 507, 512 (1925) (stating that "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon are not to be considered as having been so decided as to constitute precedent").

under Fed. R. Evid. 803(8).

### 1.     The Notice to Appear Is Inadmissible.

The notice to appear is inadmissible under Fed. R. Evid. 401, 403, and 803(8).  The notice to appear is a document that provides *notice* of the grounds for removal.  It does not record the "objective, ministerial fact" of alienage any more than an indictment provides an objective observation that a person committed a crime.  This document is nothing more than an *accusation* that the government must prove in an immigration proceeding.  Thus, this Court should preclude the admission of the order to show cause.

### 2.     The Warnings of Possible Penalties Is Inadmissible.

Likewise, the warnings of possible penalties is inadmissible under Fed. R. Evid. 401, 403, and 803(8). The warning contains boilerplate statements (drafted by the DHS) regarding the penal consequences to an alien who illegally reenters the country. It has no bearing on whether a defendant is in fact an alien, and it makes no fact at issue in this case more or less probable. This document contains inadmissible hearsay; it is irrelevant and more prejudicial than probative. It also must be excluded at trial.

### 3.     If this Court Finds These Documents Are Somehow Relevant, They Are Not Admissible to Establish Alienage, and The Court Should Provide the Jury With a Limiting Instruction.

To the extent that this Court finds any A-file document relevant to some point, they are not admissible to establish Mr. Lara's alienage, and this Court should redact these documents to exclude all references to alienage and, pursuant to Fed. R. Evid. 105, instruct the jury as to the limited value of such documents.

17

1    **C.    This Court Must Preclude the Admission of the A-file Documents to Establish**
2    **Alienage to Protect Mr. Lara's Constitutional Rights.**

3    This Court must preclude the admission of the A-file documents to establish the fact of

4    alienage to protect Mr. Lara's rights to confrontation of witnesses and to a jury trial based upon

5

6    proof beyond a reasonable doubt, as guaranteed by the Fifth and Sixth Amendments.

7    Specifically, because the right to confrontation is not applicable in immigration proceedings, the

8    government may have met its burden of proving alienage based upon otherwise inadmissible

9    hearsay. Cunanan v. INS, 856 F.2d 1373, 1374 (9th Cir. 1988). Because a criminal defendant

10   never has the opportunity to confront those witnesses upon whose hearsay statements the

11   immigration judge may have relied, the admission of the INS' evaluation of alienage deprives

12

13   a defendant of his right to confront the witnesses against him.

14

15   In addition, in immigration proceedings, the government need only establish alienage by

16   clear and convincing evidence. Murphy v. INS, 54 F.3d 605, 608-610 (9th Cir. 1995).  Once the

17   government has established a person's foreign birth, the burden shifts to the purported alien to

18   establish, by a preponderance of the evidence, that he falls within one of the statutory provisions

19

20   for derivative citizenship. Id. Given the lower burden of proof and the shifting presumption, the

21   admission of these documents against a criminal defendant to establish the fact of alienage has

22   the effect of lowering the government's burden of proving alienage in the criminal trial.

23

24   Finally, a determination of alienage by a quasi-judicial decision-maker represents

25   powerful evidence of an element of the offense, and it creates a substantial risk that the jury will

26   give this evidence undue weigh or conclusive effect. Cf. Nipper v. Snipes, 7 F.3d 415, 418 (4th

27   Cir. 1993) (internal quotations omitted) (stating "judicial findings of fact 'present a rare case

28

where, by virtue of there having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice'"); Fed. R. Evid. 803(22), Advisory Committee Note (observing that "it seems safe to assume that the jury will give [evidence of a criminal judgment] substantial effect unless defendant offers a satisfactory explanation").  The Government's  introduction of a government agency's finding of alienage to establish the fact of alienage carries with it the imprimatur of governmental, if not judicial, approval.  The admission of this factual finding  accordingly undermines a defendant's constitutional right to a reliable jury finding of an essential element.

Hence, because the A-file documents are generated by the Government without the constitutional safeguards surrounding criminal proceedings, it is constitutionally untenable to authorize their admission, as evidence of alienage, in a criminal prosecution.  This Court should exclude these documents in their entirety, or, to the extent they are admissible to prove some other fact, redact these documents to exclude reference to Mr. Lara's alienage and instruct the jury as to their limited relevance.

## VIII.
## MR LARA REQUESTS THAT THE COURT ALLOW ATTORNEY-CONDUCTED VOIR-DIRE

Pursuant to Rule 24(a), Federal Rules of Criminal Procedure, to provide effective assistance of counsel and to exercise Mr. Lara's right to trial by an impartial jury, defense counsel requests the opportunity to personally voir dire the prospective members of the jury.

## IX.
## THIS COURT SHOULD PRECLUDE THE ADMISSION OF AN AUDIO-TAPE OR TRANSCRIPT OF THE DEPORTATION HEARING.

Only relevant evidence is admissible at trial.  Fed. R. Evid. 402; <u>see also</u> Fed. R. Evid. 401 (relevant evidence is that which makes a fact more or less probable).  At trial, the Government must prove only the fact of the deportation -- not its underlying validity.  <u>United States v. Mendoza-Lopez</u>, 481 U.S. 828, 837-839 (1987).  Because the conduct of the proceedings at the deportation are not relevant to any fact at issue in this trial, the tape (and or transcript) of the deportation hearing should be excluded at trial.

Moreover, the introduction of such evidence would merely be a waste of time and would likely confuse the jury, and to the extent that it is marginally relevant to some issue, it is more prejudicial than probative.  Fed. R. Evid. 403.  Thus, this Court should preclude the admission of the tape and or transcript of the deportation hearing at trial.

## X.

## THIS COURT SHOULD EXCLUDE INADMISSIBLE HEARSAY OF WITNESSES

<u>Crawford v. Washington</u>, 541 U.S. 36 (2004), squarely holds, pursuant to the Sixth Amendment, that pre-trial, testimonial statements may not be admitted against a defendant at trial where the defendant has not had a chance to cross examine the declarant.  <u>Id.</u> at 68.  This is true even where the statements fall within a "firmly rooted hearsay exception" or bear "particularized guarantees of trustworthiness."  <u>Id.</u> at 40.  As such, this case overturns the Supreme Court's own precedent in <u>Ohio v. Roberts</u>, 448 U.S. 56 (1980).  Similarly, it squarely overturns the Ninth Circuit's precedent, <u>United States v. Winn</u>, 767 F.2d 527 (9th Cir. 1985),

upon which the Government relies.[3]

In Crawford, the petitioner was tried for assault and attempted murder.  Crawford at 40.

The State sought to introduce a recorded statement that petitioner's wife Sylvia had made during

police interrogation, as evidence that the stabbing was not in self-defense.  Id.  Sylvia did not

testify at trial because of Washington's marital privilege.  Id. Petitioner argued that admitting the

evidence would violate his Sixth Amendment right to be "confronted with the witnesses against

him."  Under Roberts, that right did not bar admission of an unavailable witness's statement

against a criminal defendant if the statement bore "adequate indicia of reliability," a test that was

met when the evidence either fell within a "firmly rooted hearsay exception" or bore

"particularized guarantees of trustworthiness."  448 U.S. at 66.  The trial court admitted the

statement on the latter ground.  The State Supreme Court upheld the conviction, deeming the

statement reliable because it was nearly identical to, *i.e.,* interlocked with, petitioner's own

statement to the police, in that both were ambiguous as to whether the victim had drawn a

weapon before petitioner assaulted him.  Crawford, 541 U.S. at 40.  The Supreme Court

overturned the conviction holding that the State's use of Sylvia's statement violated the

Confrontation Clause of the Sixth Amendment because, Sylvia's statement was testimonial in

nature and where such testimonial statements are at issue, the only indicium of reliability

---

[3]Winn relied on the holding of Roberts when it upheld the admission of hearsay statements of deported material witnesses that related to their alienage and method of entry. Winn, 767 F.2d at 530.  In Winn, the Ninth Circuit held that such statements were reliable (based on the circumstances surrounding the declarants' arrest) and thus, admissible pursuant to Roberts.  Winn at 530.  Because Crawford overturns Roberts, and because it clearly holds that the only means of determining constitutional reliability is confrontation, *i.e.*, cross-examination, the holding of Winn is no longer good law.  See also Whorton v. Bockting, 127 S. Ct. 1123, 1181 (2007) (Crawford overruled Roberts).

sufficient to satisfy constitutional demands is confrontation, *i.e.*, cross examination by the defendant. Id. at 69.

The Supreme Court reasoned, after a lengthy discussion of the historical context of the Confrontation Clause, that the Sixth Amendment was drafted in order to protect against the "civil-law mode of criminal procedure" and "its use of *ex parte* examinations as evidence against he accused." Id. at 50. Such *ex parte* examinations run into Sixth Amendment concerns because they are "testimonial" in nature. The "text of the Confrontation Clause reflects this focus." Id. at 51. It applies to "witnesses against the accused - in other words, those who bear testimony." Id. (internal quotations omitted). Thus, the Sixth Amendment is concerned with "testimonial" statements. Id. at 2953. "Various formulations of this core class of 'testimonial' statements exist:

> *ex parte* in-court testimony or its functional equivalent--that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar **pretrial statements that declarants would reasonably expect to be used prosecutorially** . . . extrajudicial statements . . . contained in formalized testimonial materials, such as **affidavits**, depositions, prior testimony, or **confessions** . . . statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial . . . **Statements taken by police officers in the course of interrogations are also testimonial under even a narrow standard**."

Id. at 52 (internal citations and quotations omitted).

The Court went on that:

> "[w]here testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions

of 'reliability . . .'  The <u>Roberts</u> test allows a jury to hear evidence, untested by the adversary process, based on a mere judicial determination of reliability.  It thus replaces the constitutionally prescribed method of assessing reliability with a wholly foreign one.  In this respect, it is very different from exceptions to the Confrontation Clause that make no claim to be a surrogate means of assessing reliability.

<u>Id.</u> at 61-2.

Thus, the Confrontation Clause does not permit testimonial statements to be admitted at trial without the "constitutionally prescribed method of determining reliability," *i.e.*, confrontation.  <u>Id.</u> at 62.  In other words, [w]here testimonial evidence is at issue . . . the Sixth Amendment demands . . . unavailability [of the declarant] and a prior opportunity for cross-examination."  <u>Id.</u> at 54.  In this case, Mr. Lara was not given an opportunity to cross examine the material witnesses before being deported.  As such, if the material witness is unavailable for trial, any statements taken from him is inadmissible under the plain reading of the Sixth Amendment and the clear holding of <u>Crawford</u>.

## XI.

## <u>AGENTS SHOULD NOT BE ALLOWED TO TESTIFY ABOUT THE TRUTHFULNESS OF MR. LARA's STATEMENTS AT THE TIME OF THE ARREST</u>

Credibility is a matter to be decided by the jury.  Any testimony by Agents that any post-arrest statement by Mr. Lara was untruthful is irrelevant and inadmissible under Ninth Circuit precedent.

The Ninth Circuit has held that it is reversible error to permit a Border Patrol Officer to testify over objection that another agent was telling the truth.  <u>See United States v. Sanchez-Lima</u>, 161 F.3d 545 (9th Cir. 1998).  In <u>Sanchez-Lima</u>, a Border Patrol Officer testified that "based on his

training and experience, Agent Kermes [an agent who testified before the jury] was telling the truth" during his post incident interview.  Id. at 548.  The Ninth Circuit noted that "[t]his court has already held that opinion evidence regarding a witness' credibility is inadmissible."  Id.  (citing United States v. Awkard, 597 F.2d 667, 671 (9th Cir. 1979)).  The Sanchez-Lima Court held that it is error to permit a witness to testify over objection that another witness's extra-judicial statements were truthful.  Id.

The Ninth Circuit reached an analogous result in United States v. Sanchez, 176 F.3d 1214 (9th Cir. 1999).  In Sanchez, the prosecutor's questions on cross-examination of the defendant compelling the defendant to give his opinion regarding the credibility of a deputy marshal was error.  The Sanchez Court noted that it could not "discern any principled distinction between asking a law enforcement officer his opinion regarding whether the defendant was untruthful during a police interview and the improper tactical ploy condemned in Sanchez-Lima.  Eliciting the officer's opinion regarding Sanchez's credibility was misconduct."  Id. at 1221.

Allowing Agents to testify about the truthfulness of Mr. Lara's statements would qualify as reversible error as well.  Explicit Ninth Circuit precedent, logically indistinguishable from the instant case, bars the use of this kind of evidence against the defendant.  Therefore, Mr. Lara requests that Agents not be permitted to testify about his opinions of the truthfulness of any of Mr. Lara's post-arrest statements.

## XII.

## REQUEST FOR LEAVE TO FILE FURTHER MOTIONS

As new information surfaces due to the government providing discovery in response to these motions, those previously filed, or an order of this Court, defense counsel requests the opportunity to file further motions.

24

# XIII.
## CONCLUSION

For the above stated reasons, it is respectfully requested that the Court grant the above motions.

Respectfully submitted,


/s/ Sylvia Baiz

Dated: May 19,  2008    **SYLVIA BAIZ**
Attorney for Defendant **Lara**