KAREN P. HEWITT
United States Attorney
CHRISTINA M. McCALL
Assistant United States Attorney
California Bar Number 234139
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6760
Facsimile: (619) 235-2757

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 08CR0443-WQH |
| Plaintiff, | **UNITED STATES' OPPOSITION TO DEFENDANT'S MOTIONS "IN LIMINE" TO:** |
| v. | **(1) DISMISS INDICTMENT DUE TO UNDERLYING DEPORTATION** |
| ALBERTO JACOBO LARA, | **(2) SUPPRESS STATEMENTS** |
| | **(3) DISMISS INDICTMENT DUE TO DELAY IN BEING ARRAIGNED IN FEDERAL COURT** |
| Defendant. | **(4) EXCLUDE EVIDENCE UNDER FRE 404(B) AND 609** |
| | **(5) LIMIT TESTIMONY OF A-FILE CUSTODIAN** |
| | **(6) PROHIBIT INTRODUCTION OF A-FILE DOCUMENTS TO PROVE ALIENAGE** |
| | **(7) ALLOW ATTORNEY VOIR DIRE** |
| | **(8) PRECLUDE ADMISSION OF TAPE OF TRANSCRIPT OF DEPORTATION HEARING** |
| | **(9) EXCLUDE HEARSAY** |
| | **(10) PRECLUDE AGENTS FROM TESTIFYING ABOUT DEFENDANT'S STATEMENTS AT THE TIME OF HIS ARREST** |
| | Date:       June 2, 2008<br>Time:      2:00 p.m.<br>Honorable: William Q. Hayes |

Plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, and Christina McCall, Assistant United States Attorney, hereby files its Response in Opposition to Defendant's Motions in Limine. This Response in Opposition is based upon the files and records of the case together with the attached statement of facts, memorandum of points and authorities, and exhibits.

## I.

## STATEMENT OF FACTS

### A.   Defendant's Criminal and Immigration Record

On August 24, 2000, Defendant, Alberto Jacobo Lara, was convicted of two counts of lewd and lascivious acts with a child under the age of 14, and was sentenced to three years in state prison. [Exhibit 1, Defendant's State Court Records.]

On February 27, 2003, the Immigration and Naturalization Service issued a Notice to Appear before an Immigration Judge for removal proceedings to Defendant. [Exhibit 2, Notice to Appear for Removal Proceedings.] Defendant was personally provided with a copy of the Notice to Appear on March 12, 2003 in state prison. The Notice to Appear alleged that Defendant was deportable because he: (1) was not a United States citizen; (2) was a citizen of Mexico; (3) was convicted of Lewd Acts Upon a Child; and (4) received a three year prison sentence for that offense.

On April 23, 2003, Defendant appeared before Immigration Judge James in El Centro, California. [Exhibit 3, transcript of immigration hearing.] Defendant was represented by an attorney, M. Yehlen Brooks. During the hearing, Defendant admitted he was not a citizen and national of the United States, as charged in allegation 4 of the Notice to Appear. Defendant also admitted he was a native and citizen of Mexico, allegation 5. Defendant agreed he was admitted into the United States in March of 1990 as an immigrant. Defendant challenged the allegation regarding his Lewd Acts criminal conviction, based upon a collateral attack Defendant's state court criminal attorney was pursuing. Defendant chose to be removed to Mexico, and indicated he was not pursuing an application for relief from deportation unless the collateral attack on the state conviction succeeded.

On September 9, 2003, Defendant again appeared before Judge James for the second part of his deportation hearing. [Exhibit 4, transcript of second immigration hearing.] Defendant was again

1 represented by attorney Brooks. The government presented proof of Defendant's conviction for Lewd
2 Acts With a Child, and proof that the judgment and sentence in that case were confirmed after appeal.
3 Judge James concluded that Allegations 7 and 8, that Defendant was convicted of violating Penal Code
4 § 288(a) and received a prison sentence of 3 years, were established. Judge James found that Defendant
5 was subject to deportation and removal because of his aggravated felony, and because his crime involved
6 child abuse. Judge James noted that no applications for relief were submitted and no citizenship issues
7 were presented in the case.

8       Following the hearing on September 9, 2003, Immigration Judge James ordered Defendant
9 removed to Mexico. [Exhibit 5, Removal Order.] Initially, Defendant filed a notice of appeal with the
10 Board of Immigration Appeals, but Defendant withdrew his appeal on December 15, 2003. [Exhibit 6,
11 BIA notice/withdrawal.] Defendant was removed through the Calexico port of entry on January 9, 2004.
12 [Exhibit 7, Warrant of Removal.]

13 **B.     Apprehension**

14       On January 23, 20008, around 4:00 p.m., Defendant drove an 18-wheel tractor-trailer into a
15 California Highway Patrol ("CHP") inspection site in the southbound lanes of Interstate 5 freeway near
16 San Onofre. The inspector conducting the initial inspection noticed that Defendant's log book was not
17 current, and that Defendant may have exceeded the maximum number of driving hours.

18       The inspector also noticed a juvenile passenger inside the tractor-trailer's cab, with Defendant,
19 who appeared to be younger than 17 years old. Officer Sablan asked Defendant if Defendant had a co-
20 driver traveling with him. Defendant said he did not have a co-driver, claiming the juvenile was his
21 nephew, and that the juvenile was 17 years old. Defendant said that he and the juvenile began the trip
22 in Stockton earlier in the day. When asked the juvenile's last name and the last name of the juvenile's
23 guardian, Defendant paused, and, with an embarrassed expression of a smile, Defendant said he did not
24 know the last name of the juvenile or his guardian.

25       Officers conducted a criminal warrant check on Defendant and learned that Defendant was
26 required to register with the state of California as a sexual offender, and was probably not in compliance
27 with the registration requirements. After confirming that Defendant had not registered as required, CHP
28 officers placed him under arrest for violating California Penal Code § 290(g)(2). At about 5:52 p.m.,

1  Officer Sablan advised Defendant that he was under arrest for violating section 290(g)(2) and notified
2  Defendant of his Miranda rights. Defendant indicated that he understood his rights, and said he did not
3  want to speak answer Officer Sablan's questions at that time. Defendant did not say that he refused to
4  speak to any other law enforcement officer, nor did he said that he requested the presence of an attorney
5  before questioning. No further interviews took place by CHP officers.

6  Officer Sablan phoned United States Border Patrol agents, who determined that Defendant was
7  a Mexican citizen who was removed from the United States on January 9, 2004. Immigration and
8  Customs Enforcement ("ICE") Special Agent Pryor determined that Defendant had not received official
9  permission to return to the United States. On January 25, 2008, Magistrate Judge Adler signed a
10 complaint and issued arrest warrant for Defendant, finding probable cause to believe that he had violated
11 8 U.S.C. § 1326. [Exhibit 8, federal complaint.] That day, ICE agents went to the San Diego County
12 Vista Detention Center to execute the federal arrest warrant, and transported Defendant to the San Ysidro
13 Port of Entry.

14 At the port, an ICE agent informed Defendant that he was arrested for violating 8 U.S.C. § 1326.
15 The agent advised Defendant of his Miranda rights in English. Defendant indicated that he understood
16 his rights, and agreed to answer questions without a lawyer present. The interview lasted less than
17 fifteen minutes. Defendant admitted he was a Mexican citizen, born in Mexicali, Baja California.
18 Defendant admitted that he did not have the proper documentation to enter or remain in the United
19 States. Defendant acknowledged that he was ordered deported by an immigration judge. Defendant
20 admitted that he re-entered the United States through the Calexico port of entry shortly after his
21 deportation. Defendant said he used his old Resident Alien card, which he admitted he never returned
22 after being deported. Defendant admitted that he was fully aware that he was not entitled to possess or
23 utilize the resident alien card. Defendant admitted that he had not applied for or received permission
24 to re-enter the United States.

25 On February 13, 2008, a federal grand jury for the Southern District of California returned a one-
26 count Indictment against Defendant, charging him with being an alien who was found in the United
27 States without the consent of the Attorney General or the Secretary of Homeland Security, after having
28 been previously excluded, deported, or removed, in violation of Title 8 U.S.C. § 1326. The Indictment

1  further alleged that Defendant was removed from the United States subsequent to January 9, 2004, the
2  date of his prior aggravated felony convictions.

## II

### UNITED STATES' RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE

As a preliminary matter, the United States urges this Court to summarily deny Defendant's motion to suppress statements and motion to dismiss the Indictment due to a delay in bring Defendant before a federal magistrate to be informed of the charges filed against him. Those motions are untimely. While this Court gave defense counsel special permission to file a deportation challenge after the motion hearing deadline, there was no permission granted to file other substantive motions two weeks prior to trial. The substantive motions to dismiss the Indictment and suppress statements were improperly filed as motions in limine weeks after the deadline for filing substantive motions.

The proffered reason for filing the deportation challenge weeks after the deadline was defense counsel's inability to procure an audiotape player that could reduce the speed of the audiotape of Defendant's immigration proceeding. The government notes that the audiotape was initially provided on March 25, 2008, when the prosecutor first received it. It was provided at a slower speed on May 6, 2008.

**A.    THE COURT SHOULD NOT DISMISS THE INDICTMENT; THERE WERE NO FLAWS IN THE UNDERLYING DEPORTATION/REMOVAL ORDER**

**1.    Introduction**

Defendant appears to argue that his due process rights were violated when he was ordered removed by an immigration judge, without being informed of any availability of relief under 8 U.S.C. § 1182(h) (also known as INA § 212(h)). Defendant emphasizes that he is married to a United States citizen and has three United States citizen teenage children. Defendant argues that the indictment should be dismissed because the United States cannot show a valid deportation. Defendant cannot prevail because he cannot demonstrate prejudice from any due process violation, even were he able to prove such a violation, which he cannot. As the Immigration Judge found, Defendant's prior convictions precluded him from any relief from removal.

A defendant charged with illegal reentry after removal under 8 U.S.C. § 1326 may collaterally attack the removal order only under limited circumstances. United States v. Mendoza-Lopez, 481 U.S. 828, 837-38 (1987). To sustain a collateral attack, a defendant must show the following: (1) that he exhausted all administrative remedies available to him to appeal his removal order; (2) that the underlying removal proceedings at which the order was issued "improperly deprived [him] of the opportunity for judicial review;" **and** (3) that "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d).

The Ninth Circuit has stated that "[a]n underlying removal order is fundamentally unfair if: (1) [an alien's] due process rights were violated by defects in the underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1048 (9th Cir. 2004) (internal quotation marks omitted).

### 2. Defendant Failed to Exhaust Administrative Remedies

As a preliminary matter, Defendant failed to exhaust his administrative remedies when he deliberately withdrew his appeal of the immigration judge's removal order, in order to be released from custody and returned to Mexico. [Exhibit 6.] Defendant's counseled withdrawal of appeal reflects a knowing, intelligent and voluntary waiver.

This is a classic case of failure to exhaust known remedies. See Rashtabadi v. INS, 23 F.3d 1562, 1567 (9th Cir. 1994) ("Failure to raise an issue in an appeal to the BIA constitutes a failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear the matter."). On this ground alone, Defendant's collateral attack on his deportation fails.

Defendant claims exemption from the exhaustion bar because he alleges his due process rights were violated when the Immigration Judge failed to advise him that he was eligible to seek various forms of relief. As discussed below, Defendant was not eligible for relief. Thus, there was no due process violation and Defendant is subject to the exhaustion requirement.

### 3. Defendant Was Not Denied Judicial Review

As demonstrated in the transcript, Defendant was informed of his right to appeal the Immigration Judge's removal order at the end of his hearing on September 9, 2003. Defendant was therefore *not* denied judicial review of his removal order but granted it. In fact, Defendant exercised his right to

1  appeal the decision, before deciding to withdraw his appeal. On *this* ground alone, Defendant's attempt
2  to collaterally attack the removal order should be denied. See § 1326(d) (requiring alien to satisfy *all*
3  *three* conditions before he can mount collateral attack on prior deportation order).

**4.     Defendant's Removal Was Not Fundamentally Unfair**

Because Defendant's prior convictions render him ineligible for relief, Defendant cannot show a due process violation.

**a.     Defendant Suffered a Disqualifying Conviction**

Defendant's prior convictions for Lewd Acts With a Child Under 14 are aggravated felonies and crimes of moral turpitude. Both render Defendant ineligible for the forms of relief Defendant cites.

**(1)     Lewd Acts With a Child Under 14 is an Aggravated Felony**

An "aggravated felony"is defined in INA § 101(a)(43)(A) as "murder, rape, or sexual abuse of a minor." 8 U.S.C. § 1101(a)(43)(A). Defendant was convicted of two violations of § 288(a), which prohibits lewd and lascivious acts with a minor who is under 14 years of age. Cal. Pen. Code § 288(a). The Ninth Circuit has squarely decided that this crime is sexual abuse of a minor, categorically an aggravated felony under the Immigration Act, 8 U.S.C. § 1101(a)(43). See United States v. Baron-Medina, 187 F.3d 1144, 1145 (9th Cir. 1999) ("[A] conviction under Section 288(a) constitutes a conviction for 'sexual abuse of a minor' within the meaning of 8 U.S.C. § 1101(a)(43)(A).").

A legal permanent resident convicted of an aggravated felony after the date of admission for permanent residence is ineligible for a waiver of the removal order. See 8 U.S.C. § 1182(h); Taniguchi v. Schultz, 303 F.3d 950, 956-58 (9th Cir. 2002) (explaining that "[e]liminating the availability of § 212(h) relief for [legal permanent residents] prevents such an alien from applying to adjust his status while still within the U.S.").

**(2)     Lewd Acts with a Minor Under 14 is a Crime of Moral Turpitude**

Not only are aliens who are present without entry inadmissible, so too are aliens who have been convicted of certain crimes inadmissible. In particular, aliens who have been convicted of crimes of moral turpitude are inadmissible. 8 U.S.C. § 1182 (a)(2)(A). The crime of committing lewd acts with a minor under 14 has been deemed a crime of moral turpitude. Swift v. Mukasey, 2008 U.S. App. LEXIS 3894 (9th Cir. February 11, 2008); See Bendel v. Nagle, 17 F.2d 719 (9th Cir. 1927) (holding

that a conviction for having carnal knowledge of a 15-year-old is a crime involving moral turpitude). Accordingly, Defendant was statutorily ineligible for adjustment of status due to his crime of moral turpitude.

### b.   Even if Defendant's Due Process Rights Were Violated, Which They Were Not, Defendant Cannot Show Prejudice Because He Was Ineligible for Relief

The only due process violation Defendant alleges is that he could have applied for 212(h) relief. [Defendant's brief at page 7, lines 10-11.] As an initial matter, Defendant was adequately represented by counsel at his removal hearing. It was actually his attorney who indicated on the record that Defendant did not wish to apply for relief. That fact indicates that the immigration attorney recognized that Defendant was statutorily ineligible for relief.

The entire proceedings were conducted in English. It was an individual, not a group proceeding, Defendant was present for the entire proceeding and responded to the Immigration Judge in English. Thus, Defendant's case was not like the proceedings where an alien's due process rights were alleged to have been violated because the Immigration Judge did not determine that the alien understood his right to appeal. Cf. United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1049-50 (9th Cir. 2004).

Defendant cannot prevail on his collateral attack because he cannot show that he suffered prejudice as a result. Because Defendant suffered a conviction for an aggravated felony, he was ineligible for any relief from removability, as the Immigration Judge properly found. To establish prejudice, a defendant must show "plausible grounds for relief." United States v. Jimenez-Marmolejo, 104 F.3d 1083 (9th Cir. 1996). Put differently, he "must show that 'a direct appeal could . . . have yielded a different result.'" United States v. Corrales-Beltran, 192 F.3d 1311, 1318 (9th Cir. 1999). Mere eligibility for relief i.e., a demonstration that relief is statutorily *possible* – does not demonstrate that relief from deportation is "plausible." See, e.g., United States v. Acre-Hernandez, 163 F.3d 559, 564 (9th Cir. 1998) (finding that although alien was eligible for "hardship waiver" under § 1182(h), showing of alien's wife's poor health and difficulty finding a job in Mexico was inadequate to show that such relief was "plausible").

Moreover, "Immigration Judges 'are not expected to be clairvoyant; the record before them must fairly raise the issue.'" United States v. Muro-Inclan, 249 F.3d at 1184 (citing Moran-Enriquez v. INS, 884 F.2d 420, 422 (9th Cir. 1989)).

Where the only relief that can be claimed is discretionary relief, Defendant cannot rely on these grounds in support of a claim to a constitutional right. The Ninth Circuit has "held that aliens have no fundamental right to discretionary relief from removal for purposes of due process and equal protection." Tovar-Landin v. Ashcroft, 361 F.3d 1164, 1166 (9th Cir. 2004). "Since discretionary relief is a privilege created by Congress, denial of such relief cannot violate a substantive interest protected by the Due Process clause." Munoz v. Ashcroft, 339 F.3d 950, 954 (9th Cir. 2003). See also INS v. Yang, 519 U.S. 26, 30 (1996) (recognizing the Attorney General's "unfettered discretion" to award suspension of deportation); Tefel v. Reno, 180 F.3d 1286, 1301 (11th Cir.1999) ("[n]o constitutionally protected interest arises from the INS' actions in granting or denying applications for suspension"). Thus, even if the Immigration Judge should have advised Defendant of certain kinds of relief, see, e.g., Ubaldo-Figueroa, 364 F.3d at 1050, that omission is simply not enough for Defendant to prevail on his collateral attack, because he cannot show he was plausibly entitled to such relief. A procedural violation of due process simply does not create a substantive right where none existed before.

In light of these considerations, Defendant cannot demonstrate prejudice because he cannot show that relief was "plausible."

Defendant cannot demonstrate that discretionary relief under 1182(h) was plausible either. Defendant's proffer that he is married to a United States citizen and has three teenage United States citizen children simply serves to meet the initial threshold inquiry, that the alien be the spouse, parent, or child of a United States citizen. This is not sufficient to show "extreme hardship" that would render discretionary relief plausible. See, e.g.,Acre-Hernandez, 163 F.3d 559, 564 (9th Cir. 1998) (rejecting claim that relief under 212(h) was "plausible" despite showing of that alien's U.S. citizen wife was in poor health and would have difficulty working in Mexico and that the family's prospects were "bleak"). "[A] § 212(h) waiver will be granted only when there is 'great actual or prospective injury' or 'extreme impact' on the citizen family member, beyond the 'common results of deportation.'" Id. Moving one's family and finding work in a new place are among the ordinary hardships of deportation. Id. As the

Ninth Circuit noted in Arce-Hernandez, such represent the "typical case of hardship that follows deportation of an alien whose citizen wife and children were all acquired after his illegal entry into the United States," as Defendant's were here. Id.

**B.     THE COURT SHOULD NOT SUPPRESS DEFENDANT'S POST-ARREST STATEMENTS, WHICH WERE VOLUNTARY AND TAKEN IN COMPLIANCE WITH MIRANDA**

This motion should be denied without a hearing, because it was filed many weeks after the deadline for filing substantive motions. This is not a motion that can, according to the Local Rules, be filed as a "motion in limine." Furthermore, the declaration submitted by Defendant falls short of establishing any violation. Although none of the agents involved in interviewing Defendant told Defendant that they would recommend that his sentence be reduced if he cooperated and agreed to answer their questions, even if they had, such a statement would be admissible.

### 1.     Statements Made After Valid Waiver Are Admissible

A statement made in response to custodial interrogation is admissible under Miranda v. Arizona, 384 U.S. 437 (1966) and 18 U.S.C. § 3501, if a preponderance of the evidence indicates that the statement was made after an advisement of rights, and was not elicited by improper coercion. See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and Miranda determinations; valid waiver of Miranda rights should be found in the "absence of police overreaching"). Although the totality of circumstances, including characteristics of the defendant and details of the interview, should be considered, improper coercive activity must occur for suppression of any statement. See id. (noting that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'"); cf. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973) ("Some of the factors taken into account have included the youth of the accused; his lack of education, or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep.") (citations omitted).

**2.   Because Defendant Has Failed to Cite Specific Facts Requiring Grant of His Motion, No Evidentiary Hearing is Necessary**

Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces *specific* facts *sufficient* to require the granting of the defendant's motion. See United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer, . . . . the district court was not required to hold an evidentiary hearing"); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1.

In this case, Defendant submitted a declaration that stated, "the agents told me that if I cooperated and answered their questions, they would recommend to the judge to reduce my sentence" and "the agents told me that my sentenced [sic] would be reduced off camera." These allegations are insufficient to require an evidentiary hearing on the improperly filed motion to suppress statements. Even if the agents had made such statements, which they did not, Defendant's subsequent statements would be admissible. "Trickery, deceit, even impersonation do not render a confession inadmissible, certainly in noncustodial situations and usually in custodial ones as well, unless government agents make threats or promises." United States v. Kontny, 238 F.3d 815, 817 (7th Cir. 2001) (citing Frazier v. Cupp, 394 U.S. 731, 739, 22 L. Ed. 2d 684, 89 S. Ct. 1420 (1969)).

In this case, the allegation that the agents would somehow recommend a favorable sentence to the judge does not render the interview involuntary. Furthermore, prior to beginning the interview, the agents informed Defendant of his Miranda rights, which Defendant waived when he agreed to speak about his immigration status.

**3.   Defendant's Post-Miranda Statements Were Voluntary**

Defendant does not provide any basis for which his post-arrest statements should be suppressed. Defendant's Declaration includes no details upon which this Court could conclude that the police

engaged in misconduct, or that his personal characteristics or the details of the detention made his videotaped[1] waiver involuntary or unknowing.

Defendant is proficient in English, as well as Spanish, as evidenced by his decision to conduct his court proceedings in this case in English. Defendant was properly advised of his Miranda rights before being questioned about the immigration offense. Defendant is no stranger to the criminal process. He was charged with several felony offenses in one criminal complaint, and experienced the entire California criminal justice system. First, Defendant was arraigned on the state charges. Then, Defendant eventually entered a guilty plea, was sentenced, and appealed the conviction to the California appellate court. Defendant invoked his right to remain silent when the California Highway Patrol officer attempted to interview him about the failure to register as a sexual offender, demonstrating his knowledge of his constitutional rights. A few days after the interview on January 25, 2008, Defendant again asserted his right to remain silent, instead of answering questions involving sexual offenses. Defendant appeared comfortable in the well-lit interview room with only two law enforcement officials present. The entire interview, including Miranda warnings, only lasted thirty minutes, so the length of the interview was not coercive.

**C.   THE COURT SHOULD NOT DISMISS THE INDICTMENT BECAUSE DEFENDANT WAS IN CUSTODY FOR 72 HOURS BEFORE APPEARING IN COURT**

Again, this motion was filed long after the deadline for substantive motions. On this basis alone, it should be denied. Furthermore, on the merits, there are a number of reasons why this motion to dismiss fails.

Defendant alleges that the delay between the time of his arrest and his first appearance before a magistrate judge requires dismissal of the Indictment. Defendant is wrong. First, the delay in bringing Defendant before the magistrate was necessary. Second, even if such a delay was improper, dismissal of the Indictment is not a proper remedy. Third, Defendant suffered no prejudice as a result of the delay.

The Supreme Court set out rules of promptness for defendants arrested without a warrant. In County of Riverside v. McLaughlin, 500 U.S. 44 (1991), the Court indicated that a jurisdiction that

---

[1]   The United States can submit a copy of the videotape to the Court for its review in considering this motion.

1  "provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter,
2  comply with the promptness requirement of Gerstein." Id. at 56.
3      Defendant correctly states that he was arrested on January 23, 2008, by California Highway
4  Patrol officers. This arrest took place at 5:52 p.m. However, Defendant chooses not to acknowledge
5  that he was initially arrested for failure to register as a sexual offender. Defendant did not enter federal
6  custody until two days later. The federal arrest warrant was issued on January 25, 2008, which was a
7  Friday. Judge Adler signed the complaint, indicating that he had found probable cause to believe that
8  Defendant had committed a violation of 8 U.S.C. § 1326. The complaint was filed with the clerk's
9  office at 12:54 p.m. on January 25, 2008. Defendant made his initial appearance before a federal
10 magistrate judge on Monday, January 28, 2008. This is a very typical time frame for defendants in
11 federal cases who are taken into custody on a Friday, since this district does not perform weekend
12 arraignments.
13     Even if the relevant time calculation were to begin when Defendant was taken into custody by
14 state officials for a different offense, Judge Adler made the probable cause determination well within
15 48 hours of Defendant's arrest. Under County of Riverside, this is a prompt judicial determination. The
16 Indictment should not be dismissed because there was no unreasonable delay. Similarly, the post-arrest
17 statements that Defendant made should not be suppressed due to any alleged delay in bringing Defendant
18 into court for his initial appearance on the federal charges.

19 **D.  404(b) AND 609 EVIDENCE**

20     The United States briefed the admissibility of evidence under Rule 609 in its motions in limine.
21 Appropriate redactions to references to Defendant's child molestation convictions in the Notice to
22 Appear will be made before the jury sees the document. The government does not intend to introduce
23 evidence of Defendant's prior conviction under Rule 404(b), only under Rule 609 for impeachment,
24 should Defendant choose to testify.

25
26
27
28

**E.   LIMITING TESTIMONY OF THE CUSTODIAN OF RECORDS**

In the United States' motions in limine, this issue is thoroughly addressed. The custodian is available for cross examination.

**F.   PRECLUDING THE INTRODUCTION OF A-FILE DOCUMENTS**

Defendant concedes that the holding in United States v. Lara-Herrera, 273 F.3d 1213 99th Cir. 2001) allows use of A-file documents as evidence of alienage.

**G.   THE WARRANT OF DEPORTATION AND ORDER OF DEPORTATION ARE ADMISSIBLE**

The government does not intend to rely upon the order of deportation or the warrant of deportation to establish Defendant's alienage; these documents will be introduced to prove the element of removal from the United States.

The Notice to Appear is important evidence that Defendant was placed into removal proceedings, and that he had adequate notice of the pending proceedings. It is admissible as an official public record. Additionally, the Notice to Appear places Defendant's admissions in the deportation hearing in context, since the immigration judge refers to the allegations contained in the Notice to Appear. Without the Notice to Appear, the immigration hearing makes no sense, and would confuse the jury. The Warnings to Alien Ordered Deported or Removed form is important evidence about Defendant's knowing and voluntary re-entry, and is both relevant and admissible.

**H.   VOIR DIRE**

The United States joins in this request, and is confident this Court will allow each attorney equal time to question the potential jurors.

**I.   DEPORTATION HEARING AUDIOTAPE/TRANSCRIPT**

Defendant's admissions made during his deportation hearing are relevant to establish his alienage, an essential issue at trial. Evidence of his admissions is relevant and admissible. It is not substantially more prejudicial than probative.

**J.   CONFRONTATION CLAUSE ISSUES**

Defendant moves to exclude testimony of a material witness, whose identity is unknown. On page 23 of Defendant's motion, he refers to a material witness, and claims he was not given an

opportunity to cross examine the mysterious material witness in this illegal re-entry case. The United States has never named a material witness in this case.

### K. AGENT TESTIMONY ABOUT DEFENDANT'S TRUTHFULNESS

The agents who encountered Defendant are permitted to testify regarding his demeanor, his statements, and his appearance on the date of the encounter. Defendant cites no case that holds that agents are not allowed to opine about whether they felt a defendant was being truthful during an interview.

### L. LEAVE TO FILE FURTHER MOTIONS

The United States strongly opposes this motion. Defendant has already violated the Local Rules by filing substantive motions long after the deadline.

### III
### CONCLUSION

For the foregoing reasons, the United States respectfully asks that the Court deny all of Defendant's motions, except where unopposed.

DATED: May 28, 2008

    Respectfully submitted,

    KAREN P. HEWITT
    United States Attorney

    */s/ Christina M. McCall*

    CHRISTINA M. McCALL
    Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 08CR0443-WQH |
| Plaintiff, ) | |
| ) | **CERTIFICATE OF SERVICE** |
| v. ) | |
| ALBERTO JACOBO LARA, ) | |
| Defendant. ) | |

IT IS HEREBY CERTIFIED that:

I, CHRISTINA M. McCALL, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101.

I am not a party to the above-entitled action. I have caused service of UNITED STATES' RESPONSE TO DEFENDANT'S MOTIONS "IN LIMINE" AND OTHER ASSORTED SUBSTANTIVE MOTIONS on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Sylvia Baiz.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 28, 2008.

/s/ Christina M. McCall

CHRISTINA M. McCALL